**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

THE MARY A II, LLC,

      Debtor.

Case No. 11-40693-LMK

Chapter 11 Case

_____/

## <u>DISCLOSURE STATEMENT WITH RESPECT TO PLAN OF REORGANIZATION</u>

## <u>AUGUST 29, 2011</u>

**BERGER SINGERMAN**
Attorneys for Debtor
Brian G. Rich
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013
Email:  *brich@bergersingerman.com*

> THE DEBTOR RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.

## DEBTOR'S DISCLOSURE STATEMENT

The Mary A II, LLC (the "Debtor" or the "Proponent") provides this Disclosure Statement to all known creditors of the Debtor in order to disclose the information deemed to be material, important, and necessary for the creditors to arrive at a reasonably informed decision in exercising their right to abstain from voting or to vote for acceptance or rejection of the Plan of Reorganization (the "Plan") proposed by the Debtor.  A copy of the Plan accompanies this Disclosure Statement as **Exhibit A**.

Capitalized terms used herein have the meanings assigned to them in the Definitions section in the Plan.  Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

This Disclosure Statement is presented to certain holders of Claims against and Interests in the Debtor in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Code").  Section 1125 of the Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the debtor's creditors and interest holders, to make an informed judgment whether to accept or reject a plan.  This Disclosure Statement may not be relied upon for any purpose other than that described above.

**This Disclosure Statement and the Plan are an integral package, and they must be considered together for the reader to be adequately informed.  This introduction is qualified in its entirety by the remaining portions of this Disclosure Statement (including its Exhibits or Schedules), and this Disclosure Statement in turn is qualified in its entirety**

1

by the Plan.  This Disclosure Statement contains only a summary of the Plan.  You are strongly urged to review the Plan, a copy of which is provided herewith, before casting a Ballot.

No representations concerning the Debtor (particularly as to the values of its property) are authorized other than as set forth in this Disclosure Statement.  You should not rely upon any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in this Disclosure Statement, and such additional representations and inducements should be reported to Debtor's counsel, who will in turn deliver such information to the proper authorities for such action as may be appropriate.

The information contained in this Disclosure Statement, including any exhibits concerning the financial condition of the Debtor, has not been subjected to an audit or independent review except as expressly set forth herein.  The Debtor has endeavored in good faith to be accurate in this Disclosure Statement.

The statements contained in this Disclosure Statement are made as of the date of this Disclosure Statement unless another time is specified.  There is no guaranty that facts will not change after this Disclosure Statement was filed; and it must be assumed that some facts will indeed change from that time until the hearing on the approval of the Disclosure Statement (discussed below), and thereafter during the periods in which the Debtor makes payments under the Plan.

This Disclosure Statement was prepared in accordance with section 1125 of the Bankruptcy Code and not in accordance with federal or state securities laws or other applicable non-bankruptcy law.  Entities holding or trading in or otherwise purchasing,

2

**selling or transferring claims against, interests in or securities of, the debtor should evaluate this disclosure statement only in light of the purpose for which it was prepared. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission and the Securities and Exchange Commission has not passed upon the accuracy or adequacy of the statements contained herein.  Nor may this Disclosure Statement be construed to be advice on the tax, securities or other legal effects of the Plan. You should, therefore, consult with your own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.**

## OVERVIEW OF CHAPTER 11

Chapter 11 comprises the chapter of the Code primarily used for business reorganization. Formulating a plan to restructure a debtor's finances forms a fundamental purpose of a case under chapter of the Code.  Businesses also sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation.  Whether the Debtor seeks to reorganize or liquidate, a chapter 11 plan sets forth and governs the treatment and rights creditors and interest holders will receive with respect to their claims against and equity interests in a debtor's bankruptcy estate.

The Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject the plan.  The Code conclusively presumes that holders of unimpaired claims or equity interests under a proposed plan have accepted the plan and need not vote on it.  The Claims in Classes in 1, 2 and 3 of this Plan are Impaired and thus may vote either to accept or reject the Plan.  The Debtor has enclosed a Ballot with this Disclosure Statement to solicit the votes of the Creditors in Classes 1, 2 and 3.  Those

3

Creditors may vote on the Plan by completing the enclosed Ballot and mailing it to the following address:

**Counsel for the Debtor**

**BERGER SINGERMAN**
Attorneys for Debtor
Brian G. Rich
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013
Email:  *brich@bergersingerman.com*

You should use the Ballot sent to you with this Disclosure Statement to cast your vote for or against the Plan.  You may <u>not</u> cast Ballots or vote orally or by facsimile.  **For your Ballot to be considered by the Bankruptcy Court, it must be received at the above address by 5:00 p.m. (prevailing Eastern time) by the date fixed by the Bankruptcy Court on the accompanying scheduling order (the "<u>Voting Deadline</u>").**  If you are a Creditor in Class 1, 2, or 3 and you did not receive a Ballot with this Disclosure Statement, please contact:

**BERGER SINGERMAN**
Attorneys for Debtor
Brian G. Rich
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013
Email:  *brich@bergersingerman.com*

A ballot that does not indicate acceptance or rejection of a plan will not be considered. An impaired class of claims accepts a plan if at least 2/3 in amount and more than 1/2 in number of the allowed claims in the class that actually vote are cast in favor of the plan.  A class of interests accepts a plan if at least 2/3 in amount of the allowed interests of such class that actually vote are cast in favor of the plan.  Whether or not you vote, you will be bound by the terms and

4

treatment set forth in the Plan if the Bankruptcy Court confirms the Plan.  The Bankruptcy Court may disallow any vote accepting or rejecting the Plan if the vote is not cast in good faith.

Once it is determined which impaired classes have accepted a plan, the bankruptcy court will determine whether the plan may be confirmed.  For a plan to be confirmed, the Code requires, among other things, that the plan be proposed in **good faith** and comply with the other applicable provisions of chapter 11 of the Code, including a requirement that at least one class of impaired claims accept the plan, and that confirmation of the plan is not likely to be followed by the need for further financial reorganization.  The bankruptcy court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Code have been met.  The Debtor believes that the Plan satisfies all of the requirements for confirmation.

One requirement for confirmation of a plan is called the "**best interests test**." Notwithstanding acceptance of the plan by each impaired class of claims, in order to confirm a plan, if even one member of an impaired class votes to reject the plan, the bankruptcy court must determine that the plan is in the best interests of each holder of a claim or interest in such class. The best interests test requires that the bankruptcy court find that the plan provides to each member of such impaired class a recovery on account of the class member's claim or interest that has a value, as of the Effective Date of the Plan  at least equal to the value of the distribution that each such class member would have received if the debtor's assets were liquidated under chapter 7 of the Code on such date.

The Bankruptcy Code also requires that, in order to confirm a plan, the Court must find that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor ("**financial feasibility test**").  For a plan to meet this test, the Court must find that the Debtor's estate and the Reorganized Debtor possess the capital and

5

should generate the other resources to meet their respective obligations under the Plan.  The Plan Proponent believes that following confirmation of the Plan, the Reorganized Debtor will be able to fully perform all obligations under the Plan without any need for liquidation or further financial reorganization.

The bankruptcy court may confirm a plan notwithstanding the plan's rejection by some impaired classes, if the bankruptcy court finds that at least one impaired class of claims (not including any acceptances by "insiders" as defined in section 101(31) of the Code) has accepted the plan and that the plan satisfies certain additional conditions.  This provision, found in section 1129(b) of the Code, is generally referred to as the "cramdown" provision.  Pursuant thereto, the bankruptcy court may confirm a plan over the rejection by a class of secured claims if the plan is fair and equitable and satisfies one of the alternative requirements of section 1129(b)(2)(A) of the Code (otherwise known as "**cram down**").  Likewise, the bankruptcy court may confirm a plan over the rejection by a class of unsecured claims if the plan is fair and equitable and if the non-accepting claimants will receive the full value of their claims, or (even if the non-accepting claimants receive less than full value), if no class of junior priority will receive or retain anything on account of its pre-petition claims or interests.

**THESE ARE COMPLEX STATUTORY PROVISIONS, AND THE PRECEDING PARAGRAPHS ARE NOT INTENDED TO BE A COMPLETE SUMMARY OF THE LAW.  IF YOU DO NOT UNDERSTAND THESE PROVISIONS, PLEASE CONSULT WITH YOUR ATTORNEY.  THE PLAN PROPONENT EXPECTS THAT IT MAY HAVE TO RELY UPON THE "CRAMDOWN" PROVISION OF SECTION 1129(b) OF THE CODE IN ORDER TO CONFIRM THE PLAN.**

The Court has set a hearing on confirmation of the Plan for _____ at _____, Room _____, Tallahassee, Florida.  Creditors may vote on the Plan by filling

out and mailing the accompanying ballot form to the Bankruptcy Court.  Your Ballot must be filed on or before _____2011.

## I.    PRELIMINARY STATEMENT AND HISTORY AND FINANCIAL CONDITION OF DEBTOR

### (1)    HISTORY OF DEBTOR

The Debtor is a Florida Limited Liability Company which was formed on February 15, 2002.  The Debtor's members are James M. Rudnick is the Managing Member and holds 90% of the Interests in the Debtor.  Donald T. Carrigan holds 10% of the Interests in the Debtor.   The Debtor owns approximately 2,068 acres of real property in Brevard County Florida (the "Property").   The Debtor's operations and principal place of business are and have always been located at 226 North Duval Street, Tallahassee, Florida.   The Property was originally acquired in 2004 and was placed in a conservation easement.   Ultimately, after significant efforts, the Property became a wetlands mitigation bank which sells credits to developers or other entities that need to impact wetlands.   The Debtor holds the right to sell approximately 937.69 mitigation credits approved and permitted by the St. Johns River Water Management District and 847.92 mitigation credits approved and permitted by the U.S. Army Corps of Engineers (the "Credits").   Mitigation banking is the restoration, creation, enhancement or preservation of a wetland, stream or habitat conservation area which offsets expected adverse impacts to similar nearby ecosystems.  The federal government, under Section 404 of the Clean Water Act, as well as Florida and local governmental agencies, require developers and state and federal agencies who wish to disturb or destroy wetlands to mitigate the damage by creating an offsetting wetland or by purchasing credits from an approved mitigation bank.  As performing the mitigation onsite can be expensive and difficult to maintain, developers and other entities that impact wetlands are attracted to purchasing mitigation bank credits because they are quantifiable and shift

7

responsibility for ongoing maintenance to the mitigation bank provider such as the Debtor.   The Debtor operates pursuant to an Operating Agreement dated May 2004, which has been subject to certain amendments.  The Debtor generates revenue through the sale Credits.  With the downturn in the real estate economy, the need for credits decreased.  The value of the Credits is unknown. However an appraisal from 2009 valued the Property at $25 Million. A historical listing of past credit sales is attached hereto as **Exhibit B**.    The most recent report from the Receiver in the State Court Action reveals that there is the pending sale of 28 District Credits and 3.1 Army Corp of Engineers credits for a total of $1,119,500 ($35,000) per credit.  The Debtor is in late stage negotiations with Brevard County for the sale of 50 Credits for the total price of $4,640,000.00. The Receiver noted that recent pricing has been $40,000-$45,000 per Credit.   See attached Receiver's Report attached as **Exhibit C**.   Thus, using even the conservative $35,000 per Credit pricing, the value of the Credits is in excess of $50 Million.     The Debtor also maintains an escrow believed to be in the approximate amount of $1 Million for maintenance of the Property, through a Trust Agreement whereby the St. John's River Water Management District is the beneficiary.   The Debtor submits that those funds can be maintained or utilized in the reorganization efforts.  Upon information and belief, some of these funds may have been utilized by the Receiver to resolve certain maintenance issues related to the Property.

**(2)**        **SUMMARY OF REASONS FOR FILING PETITION**

The Debtor is the subject to that certain Promissory Note, as amended and Mortgage with Federal Trust Bank ("Fed Trust"), wherein Fed Trust loaned the Debtor approximately $5.2 Million.   Fed Trust sold or otherwise assigned the Promissory Note and Mortgage to Spur Ranch Enterprises, LLC   ("Spur Ranch") (upon information and belief, Spur Ranch Enterprises, LLC acquired the Promissory Note and Mortgage at a substantial discount).   The Promissory Note

8

called for significant principal pay-downs during the term of the loan.   The Debtor has been negotiating with multiple parties for the sale of certain Credits, which will allow the Debtor to make the payments to Spur Ranch Enterprises, LLC.  However, the sale of the Credits has not yet been finalized.  However, it should be noted that the Debtor is seeking to sell approximately 70 Credits which will result in proceeds in excess of $5 Million (one contract has been executed).   This $5 Million of sales represents less than 10% of the total Credits available for sale by the Debtor.   Thus, after these sales the Debtor will still have available  several hundred credits available to sell.   In 2010, Spur Ranch Enterprises, LLC, initiated an action in the Circuit Court of the Eighteenth Judicial Circuit, in and for Brevard County Florida (the "State Court Case") against the Debtor in connection with seeking to foreclose upon the Debtor's property. On June 7, 2011, the Court appointed a receiver to undertake any and all actions necessary, proper or appropriate to preserve and protect the Debtor, including, but not limited to, taking possession and control of all assets of the Debtor.  Efforts to resolve the issues with Spur Ranch proved fruitless as the Debtor submits that Spur Ranch seeks to obtain a huge windfall by foreclosing upon the Property and realizing the value of the Credits to the detriment of all other creditors.  The Debtor filed this Chapter 11 case to restructure its obligations and sell the Credits for the benefit of all creditors and not just Spur Ranch Enterprises, LLC.  In addition to the debt to Fed Trust (Spur Ranch), the Debtor raised certain debt financing through the sale of certain Series A and Series B Notes (the "Notes").  Through these Notes, the Debtor raised in excess of $2 Million.    The Debtor submits that Spur Ranch is well over-secured and that through the sale of Credits, Spur Ranch will be paid in full, subject to certain disputes about the amounts owed to them, and that all creditors can be satisfied in full over time.

9

**(3)      SOURCE OF FINANCIAL INFORMATION**

The source of financial information for this Disclosure Statement and Plan is from reports from the Debtor and the Debtor's officers. The financial information contained herein, including the exhibits annexed to this Disclosure Statement, has not been audited.

## II.      DEBTOR'S OPERATION AND STRUCTURE

**(1)      SYNOPSIS OF OPERATION IN CHAPTER 11**

On the Petition Date, the Debtor filed its application to retain Berger Singerman, P.A. ("BSPA") to represent the Debtor in this case, *nunc pro tunc*, to the Petition Date. The Debtor recognizes that it is in all constituents' best interest to emerge from Chapter 11 as quickly as possible and accordingly, the Debtor filed its Disclosure Statement and Plan immediately upon the filing of the Case.

**1.      Appointment of Committee**

No creditor's committee has been appointed in this case as of the filing of this Disclosure Statement.

**(2)      BRIEF SUMMARY OF THE PLAN**

The Plan provides, generally, for the following:

(i)      The payment in full of all Allowed Administrative Expense Claims and Allowed Priority Claim on the Effective Date or upon such other terms as the Debtor and the holder of each Allowed Administrative Expense Claim and Allowed Priority Claim shall agree. These claims are estimated to be no more than $100,000;

(ii)      The Class 1 Claim of Spur Ranch shall retain its lien on the Property and be paid 4% interest, interest only payments for 2 years, with principal and interest payments commencing in year 3 based upon a 20 year amortization and a 3 year balloon payment. Additionally, as Credits are sold, Spur Ranch shall receive 75% of all proceeds to be applied as

10

principal reductions.  The Debtor anticipates that Spur Ranch will receive in excess of $4 Million in principal reductions prior to the end of 2012.   Upon principal pay downs, the debt shall be reamortized and payments adjusted accordingly.  The Debtor reserves the right to challenge all or a portion of the Class 1 Claim.  The Class 1 Claim is approximately $5.2 Million and is subject to dispute;

(iii)    The unsecured Allowed Claims of governmental units for unpaid taxes, interest and assessments, if any, entitled to priority under Section 507(a)(8) of the Code shall be paid in full in cash on the Effective Date or over time as provided for in the Bankruptcy Code.   The Debtor estimates these claims to be less than $250,000;

(iv)    Class 2 Note Holders shall be paid quarterly payments (commencing the first quarter after the Effective Date) based upon 4% interest, interest only payments for 2 years, with principal and interest payments commencing in year 3 and a 3 year balloon payment (total 5 year term).   Class 2 Note Holders shall be paid from the sale proceeds of Credits, after the payments to Spur Ranch or upon additional funding raised or issued by the Reorganized Debtor, if necessary.   These Claims aggregate approximately $2 Million.

(v)    Class 3 General Unsecured Creditors shall receive payment in full with a payment of 50% on the Effective Date and 50% on the one year anniversary of the Effective Date.  These claims are estimated to be less than $50,000; and

(vi) Equity Security Holders shall retain their interests in the Debtor.

**(3)**    **EXECUTORY CONTRACTS**

Any lease or executory contract not assumed by order of the Bankruptcy Court or by the terms of the Plan and Confirmation Order will be deemed  rejected. The Debtor is not a party to any material executor contracts. .

**(4)**     **OBJECTIONS TO CLAIMS**

Pursuant to the Plan and local rules, Debtor may object to any scheduled claim or Proof of Claim filed against the Debtor at least 45 days prior to the Confirmation Hearing. Such an objection shall preclude the consideration of any claims as "allowed" for the purposes of timely distribution in accordance with the Plan.

**(5)**     **PRESERVATION OF ACTIONS AND CAUSES OF ACTIONS**

From and after the Effective Date, to the extent not otherwise adjudicated or settled prior to or as a part of the Plan, all rights pursuant to sections 502, 510, 541, 544, 545 and 546 of the Bankruptcy Code; all preference claims pursuant to section 547 of the Bankruptcy Code; all fraudulent transfer claims pursuant to section 544 or 548 of the Bankruptcy Code; all claims relating to post-petition transactions under section 549 of the Bankruptcy Code; all claims recoverable under section 550 of the Bankruptcy Code; and, all claims (including claims arising at common law or equity) against any person, entity, etc., on account of any debt, other claim or right in favor of the Debtor, are hereby preserved, retained and assumed for enforcement by the Debtor, who shall, at its election, have the right to prosecute or settle, to execute and enforce any judgment or settlement agreement therein and to exercise all such avoidance powers. Based upon payments made prior to the filing of the Petition Date and the payment in full of all claims, the Debtor does not anticipate the filing of any Causes of Action or avoidance actions. However, the Debtor reserves the right to investigate these claims and file them if appropriate.

## III.    CLAIMANTS AND IMPAIRED INTEREST HOLDERS

Claimants and interest holders entitled to vote under the Plan must affirmatively act in order for the Plan to be confirmed by the Court. According to the Debtor's Plan, Classes 1, 2 and 3 are "impaired" classes within the meaning of § 1124 of the Bankruptcy Code. These

12

classes, accordingly, must vote to accept the Plan in order for the Plan to be confirmed without a cram down. A Claimant who fails to vote to either accept or reject the Plan will not be included in the calculation regarding acceptance or rejection of the Plan.

A ballot to be completed by the holders of Claims and/or Interests is included herewith. Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length. The Plan will be confirmed by the Bankruptcy Court and made binding upon all Claimants and interest holders if (a) with respect to impaired Classes of Claimants, the Plan is accepted by holders of two-thirds (2/3) in amount and more than one-half (½) in number of Claims in each such class voting upon the Plan and (b) with respect to classes of interest holders, if the Plan is accepted by the holders of at least two-thirds (2/3) in amount of the allowed interests of such class held by holders of such interests. In the event the requisite acceptances are not obtained, the Bankruptcy Court may, nevertheless, confirm the Plan if it finds that the Plan accords fair and equitable treatment to any class rejecting it. Your attention is directed to Section 1129 of the Bankruptcy Code for details regarding the circumstances of such "cram down" provisions.

## IV.    ANALYSIS OF THE PLAN VS. LIQUIDATION ANALYSIS

All payments as provided for the in the Debtor's Plan shall be funded by the Debtor's cash on hand, revenue from the sale of Credits and, if necessary additional debt or capital financing.

As with any Plan, an alternative would be a conversion of the Chapter 11 case to a Chapter 7 case and subsequent liquidation of the Debtor by a duly appointed or elected trustee. In the event of liquidation under Chapter 7, the following is likely to occur:

(a)     An additional tier of administrative expenses entitled to priority over general unsecured claims under § 507(a)(1) of the Bankruptcy Code would be incurred.   Such administrative expenses would include Trustee's commissions and fees to the trustee's accountants, attorneys and other professionals likely to be retained by said trustee for the purposes of liquidating the assets of the Debtor.

(b)     Further claims would be asserted against the Debtor with respect to such matters as income and other taxes associated with the sale of the assets, and the inability of the Debtor to fulfill outstanding, contractual commitments and other related claims.

( c)     It would be possible that the Property would be abandoned or stay relief granted in favor of Spur Ranch which would result in no recovery for any other creditors.

(d)     A liquidation analysis is attached as hereto as **Exhibit D**.

All indebtedness scheduled by the Debtor as not disputed, contingent or unliquidated or any indebtedness set forth in a properly executed and filed Proof of Claim shall be deemed an Allowed Claim unless the same is objected to, and the objection thereto is sustained by the Court.

## V.     RISK ANALYSIS

The Debtor believes there is minimal risk to the creditors if the Plan is confirmed. However, in deciding how to cast your vote, you should consider the following risk factors.  The risks that could occur are as follows:

**1.     The Debtor fails to meet its revenue projections with respect to Credit sales;**

**2.     The demand for Credits doesn't allow for payments to be made as set forth in the Plan.**

However, based upon the presently pending and potential Credit Sales, the Debtor submits that it will be able to meet its obligations under the Plan.

14

## VI.    U.S. FEDERAL INCOME TAX CONSIDERATIONS

A summary description of certain U.S. federal income tax consequences of the Plan is provided below.  This description is for informational purposes only and is subject to significant uncertainties.  Only the principal consequences of the Plan for the Debtor and for the holders of Claims and Interests who are entitled to vote to confirm or reject the Plan are described below.  No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement.  No rulings or determinations of the Internal Revenue Service ("IRS") or any other tax authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other authorities.

The following discussion of U.S. federal income tax consequences is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), regulations promulgated and proposed thereunder and judicial decisions and administrative rulings and pronouncements of the IRS as in effect on the date hereof.  Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below.  It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to holders.  Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS. FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT**

15

**ADDRESSED AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

Holders of Claims should generally recognize gain (or loss) to the extent the amount realized under the Plan (generally the amount of Cash received) in respect of their Claims exceeds (or is exceeded by) their respective tax bases in their Claims.  The tax treatment of holders of Claims and the character and amount of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan will depend upon, among other things, (a) the nature and origin of the Claim, (b) the manner in which a holder acquired a Claim, (c) the length of time a Claim has been held, (d) whether the Claim was acquired at a discount, (e) whether the holder has taken a bad debt deduction in the current or prior years, (f) whether the holder has previously included in income accrued but unpaid interest with respect to a Claim, (g) the method of tax accounting of a holder; and (h) whether a Claim is an installment obligation for U.S. federal income tax purposes.  **Therefore, holders of Claims should consult their own tax advisors for information that may be relevant to their particular situations and circumstances and the particular tax consequence to such holders as a result thereof.**

16

The tax treatment of a holder of a Claim that receives distributions in different taxable years is uncertain. If such a holder treats the transaction as closed in the taxable year it first receives (or is deemed to have received) a distribution of Cash and/or other property, it should recognize gain or loss for such tax year in an amount equal to the cash and the value of other property actually (and deemed) received in such tax year (other than that received in respect of accrued interest) with respect to its Claim (other than any portion of the Claim that is attributable to accrued interest) plus the estimated value of future distributions (if any) less its tax basis in its Claim (except to the extent its Claim is for accrued interest). A holder should then subsequently recognize additional income or loss when additional property distributions are actually received in an amount equal to the Cash and/or value of such other property (other than that received in respect of accrued interest) less the holder's allocable tax basis in its Claim with respect to such subsequent distribution. A holder may have to treat a portion of any such subsequent distribution as imputed interest recognizable as ordinary income in accordance with the holder's method of tax accounting. If instead the open transaction doctrine applies as a result of the value of the subsequent distributions that a holder may receive not being ascertainable on the Effective Date, such holder should not recognize gain (except to the extent the value of the Cash and/or other property already received exceeds such holder's adjusted tax basis in its Claim (other than any Claim for accrued interest)) or loss with respect to its Claim until it receives the final distribution thereon (which may not be until the Final Distribution Date). It is the position of the IRS that the open transaction doctrine applies only in rare and extraordinary cases. The Debtor believes that the open transaction doctrine should not apply and that holders may be entitled to take the position that on the Effective Date no value should be assigned to the right to receive any Subsequent Distributions. **Creditors are urged to consult their own tax advisors regarding**

17

**the application of the open transaction doctrine and how it may apply to their particular situations, whether any gain recognition may be deferred under the installment method, whether any loss may be disallowed or deferred under the related party rules and the tax treatment of amounts that certain Creditors may be treated as paying to other Creditors.**

Holders of Allowed Claims will be treated as receiving a payment of interest (in addition to any imputed interest as discussed in the preceding paragraph) includible in income in accordance with the holder's method of accounting for tax purposes, to the extent that any Cash and/or other property received pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Allowed Claims. The extent to which the receipt of Cash and/or other property should be attributable to accrued but unpaid interest is unclear. The Plan provides, and the Debtor intends to take the position, that such Cash and/or other property distributed pursuant to the Plan will first be allocable to the principal amount of an Allowed Claim and then, to the extent necessary, to any accrued but unpaid interest thereon. Each holder should consult its own tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any) and whether any such interest may be considered to be foreign source income. A holder generally will be entitled to recognize a loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

Certain payments, including the payments of Claims and Interests pursuant to the Plan, are generally subject to information reporting by the payor to the IRS. Moreover, such reportable payments are subject to backup withholding under certain circumstances. Under the backup withholding rules, a holder of a Claim may be subject to backup withholding at the applicable tax rate with respect to distributions or payments made pursuant to the Plan, unless the holder: (a) comes within certain exempt categories (which generally include corporations) and,

18

when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury as to the correctness of its taxpayer identification number and certain other tax matters. Backup withholding is not an additional tax. Rather, the U.S. federal income tax liability of those subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of U.S. federal income taxes, a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by timely filing the appropriate claim for refund with the IRS.

**THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES OF THE PLAN ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

**<u>CIRCULAR 230 DISCLAIMER</u>: The IRS now requires written advice (including electronic communications) regarding one or more Federal (i.e., United States) tax issues to meet certain standards. Those standards involve a detailed and careful analysis of the facts and applicable law which we expect would be time consuming and costly. We have not made and have not been asked to make that type of analysis in connection with any advice given in this e-mail. As a result, we are required to advise you that any Federal tax advice rendered in this e-mail is not intended or written to be used and cannot be used for the purpose of avoiding penalties that may be imposed by the IRS.**

## VII.    POST-CONFIRMATION STRUCTURE

Upon the Effective Date, the Debtor will make disbursements pursuant to the Plan. In accordance with, and subject to, the provisions of the Plan, the Reorganized Debtor shall continue to conduct the day-to-day operations of its business.

19

The Debtor contemplates continued management by the Debtor through James Rudnick for the necessary operation of the Reorganized Debtor's business.   Mr. Rudnick will not be paid any salary.

## VIII.   CONFIRMATION BY CRAM DOWN

The Debtor reserves the right, in the event that impaired classes reject the Plan, to seek confirmation of the Plan if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.

The Plan is deemed fair and equitable if it provides (i) that each holder of a Secured Claim retains its lien and receives deferred cash payments totaling at least the allowed amount of its claim, of a value, as of the effective date of the Plan, of at least the value of its secured interest in the property subject to his lien, and (ii) that each holder of an Unsecured Claim receives property of a value equal to the allowed amount of its claim, or no holder of a junior claim receives or retains any property.

## IX.     MISCELLANEOUS PROVISIONS

A.      Notwithstanding any other provisions of the Plan, any Claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution on account of such claim shall not be paid in accordance with the provisions of the Plan until such claim has become an Allowed Claim by a final Order.   If allowed, the Claim shall be paid on the same terms as if there had been no dispute.

B.      At any time before the Confirmation Date, the Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of § 1122 and § 1123 of the Bankruptcy Code.   After the Debtor files a modification with the Bankruptcy Court, the Plan, as modified, shall become the Plan.

20

C.     At any time after the Confirmation Date, and before Substantial Consummation of the Plan, the Debtor may modify the Plan with permission of the Court so that the Plan, as modified, meets the requirements of § 1122 and §1123 of the Bankruptcy Code.  The Plan, as modified under this paragraph, shall become the Plan.

D.     After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

E.     The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6), within ten (10) days from the entry of an order confirming this Plan, for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period.  The Debtor, as a reorganized debtor, shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6), based upon post-confirmation disbursements made by the reorganized debtor, until the earlier of the closing of this case by the issuance of a final decree by the Bankruptcy Court, or upon the entry of an order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the reorganized debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

## X.    CONCLUSION

Under the Debtor's Plan, all Creditors and interest holders of Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in its Plan are fair and afford all Claimants and interest holders equitable treatment. ACCORDINGLY, DEBTOR RECOMMENDS THAT ALL CLAIMANTS AND INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.

DATED: August 29, 2011

The Mary A II, LLC, LLC
By:
James Rudnick
Its: Managing Partner


BERGER SINGERMAN
Attorneys for Debtor
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013


By:    /s/ Brian G. Rich
       Brian G. Rich
       Florida Bar No. 038229
       brich@bergersingerman.com

22

# EXHIBIT "A"

3708708-2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

THE MARY A II, LLC,

      Debtor.　　　　　　　　　Case No. 11-40693-LMK

　　　　　　　　　　　　　　　Chapter 11 Case

_____/

## DEBTOR'S PLAN OF REORGANIZATION

**August 29, 2011**

**BERGER SINGERMAN**
Attorneys for Debtor
Brian G. Rich
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013
Email:  *brich@bergersingerman.com*

The Mary A II, LLC, the Debtor in this case (the "Debtor" or the "Proponent"), proposes the following Plan of Reorganization pursuant to 11 U.S.C. §1121:

ARTICLE 1    Definitions

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

Actions or Causes of Action

All actions that a trustee or debtor-in-possession is empowered to bring pursuant to 11 U.S.C. Sections 542-553 of the Code (as hereinafter defined), and any other cause of action, lawsuit, adversary proceeding, contested matter, claim objection, or right of the Debtor or the Estate against any Person.

Administrative Claim

A Claim for payment of an administrative expense under Section 503 of the Code that is entitled to priority under Section 507(a)(1) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. 1930.

Administrative Claimant

The holder of an Administrative Claim.

Allowed Amount

With respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in the Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules:  (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order.  In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

### Allowed Claim

Any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such or any portion thereof, Allowed Amount.  Any such claim shall be an Allowed Claim as to the undisputed portion or amount.  The Allowed Amount of each Secured Claim shall not include, pursuant to Section 506(b) of the Code, interest on such Claim, and any reasonable fees, costs, or charges provided for under the agreement(s) under which such Claim arose incurred as a result of any breach or default, act or omission occurring through the Effective Date or by reason of the Plan, Confirmation or Substantial Consummation.

### Allowed Interest

Any Interest which has not been timely disputed, or if timely disputed, which has been allowed by order of the Court which has become a Final Order.

### Article

One of the numbered Articles of the Plan.

### Assets

All of the right, title and interest of the Debtor in and to property of any type or nature.

### Business Day

A day other than a Saturday, a Sunday or a day on which commercial banks in Tallahassee, Florida are authorized or required to close.

### Case

This Chapter 11 Case No. 11-          -LMK pending in the United States Bankruptcy Court for the Northern District of Florida.

### Claim

(a) A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims and Unsecured Claims.

### Class

A group of Claims or Interests classified together pursuant to Article 2 of the Plan.

Class 1

The Secured Claim of Spur Ranch Enterprises, LLC as successor in interest to Federal Trust Bank.

Class 2

The Noteholder Claims

Class 3

Allowed General Unsecured Claims (or any successor of such claims).

Class 4

Allowed claims of Equity Holders of the Debtor.

Code

The Bankruptcy Code, 11 U.S.C. Section 101 et. seq.

Confirmation

The entry by the Court of the Confirmation Order.  .

Confirmation Hearing

A hearing held by the Court on confirmation of the Plan pursuant to Section 1128 of the Code.

Confirmation Order

The order entered by the Court confirming the Plan, which shall contain such provisions as the Proponent desires and shall otherwise be in form and substance satisfactory to the Proponent.

Court

The United States Bankruptcy Court, Northern District of Florida, including any Bankruptcy Judge thereof and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

Creditor

Any Person holding a Claim or Interest, including Administrative Claimants and Claims of the kind specified in Sections 502(b), 502(h) and 502(i) of the Code, and such Person's heirs, successors, assigns, executors and personal representatives.

<u>Debtor or Debtor in Possession</u>

The Mary A II, LLC.  Any reference in the Plan to the "Debtor" shall also include the Debtor in its capacity as debtor in possession in the Case, and vice versa.

<u>Disclosure Statement</u>

The Disclosure Statement filed by the Proponent in connection with the Plan and approved by the Court for submission to Creditors as the same may be amended from time to time.

<u>Disputed Amount</u>

With respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

<u>Disputed Claim</u>

Any Claim for which an Allowed Amount has not yet been determined and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court.

<u>Effective Date</u>

The tenth day after the Confirmation Order becomes final.

<u>Estate</u>

The estate created in the Case pursuant to Section 541 of the Code.

<u>Executory Contract</u>

A contract or unexpired lease to which Debtor is a party and that is executory within the meaning of Section 365 of the Code.

<u>Face Amount</u>

With respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as originally filed in the Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

Fee Request

An application or request for payment by the Estate of fees, compensation for services rendered or reimbursement of expenses, pursuant to Rule 2016 of the Rules or other applicable provision of the Code or the Rules.

Filing Date or Petition Date

August 29, 2011, the date the Debtor filed its Chapter 11 petition with the Court.

Final Order

An order or judgment of the Court as entered on the docket that has not been reversed, stayed, modified or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take any further appeal or to seek certiorari or further rehearing, review of reargument has expired.

If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, Proponents may jointly waive such requirement.

Lien

A charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

Mitigation Credits or Credits

The Debtor's rights in the approximately 937.69 mitigation credits approved and permitted by the St. Johns River Water Management District and 847.92 mitigation credits approved and permitted by the U.S. Army Corps of Engineers.

Noteholders

Entities or individuals that are the holders of certain Series A and Series B Notes issued by the Debtor.

Ordinary Course Administrative Claims

Administrative Claims for the provision of goods or services that are incurred by the Debtor in the ordinary course of business.

Person

Any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity or government (whether

federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

<u>Plan</u>

This Plan of Reorganization in the present form or as it may be modified, amended or supplemented from time to time.

<u>Priority Claim</u>

A Claim (other than an Administrative Claim) that is entitled to priority under Section 507 of the Code.

<u>Priority Tax Claim</u>

A Claim (other than an Administrative Claim) that is entitled to priority under Section 507(a)(8) of the Code.

<u>Property</u>

The approximate 2,068 acres of real property in Brevard County Florida owned by the Debtor.

<u>Pro Rata</u>

Proportionately, so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the Allowed Amount of such Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the amount of all Allowed Claims of that Class. Whenever a Disputed Claim has not been finally resolved, an appropriate reserve for payment of such Disputed Claim shall be established so that there will be sufficient monies available to make a Pro Rata distribution to the holder of such Disputed Claim upon final resolution of the dispute.

<u>Property of the Estate</u>

The property defined in Section 541 of the Code and any other property right or interest of the Debtor.

<u>Proponent</u>

The Debtor.

<u>Rules</u>

The Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and/or the Local Rules of the Court.

Rules of Construction and Interpretation

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a)    The terms "include", "including" and similar terms shall be construed as if followed by the phrase "without being limited to".

(b)    Words of masculine, feminine or neuter gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice versa.

(c)    All article, section and exhibit or appendix captions are used for convenience and reference only and in no way define, limit or describe the scope or intent of, on in any way affect, any such article, section, exhibit or appendix.

Schedules

The schedules of assets and liabilities originally filed by the Debtor with the Court and not as the same may be amended from time to time.

Section

A numbered subsection of any Article of the Plan (for example, this numbered subsection of Article 1 of the Plan would be referred to as Section 1.52).

Secured Claim

A Claim secured by a lien on property in which the Estate has an interest or that is subject to set-off under Section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

Secured Creditor

The holder of a Secured Claim.

Spur Ranch

Spur Ranch Enterprises, LLC as successor in interest to Federal Trust Bank

Substantial Consummation

Following the occurrence of Confirmation, the date that the first dividend is distributed to creditors.

Unsecured Claim or General Unsecured Claim

A Claim other than a Secured Claim, a Priority Claim or an Administrative Claim.

Unsecured Creditor

The holder of an Unsecured Claim.

ARTICLE 2    Classification, Treatment and Impairment of Claims and Interests

2.01    Class 1 – Spur Ranch Enterprises, LLC

(a)    Description. Class 1 consists of the Secured Claim of Spur Ranch in the approximate amount of $5.2 Million, allegedly secured by a first Lien on the Property. This Claim is disputed.

(b)    Treatment. The holder of the Allowed Class 1 Claim shall retain its lien on the Property and be paid 4% interest, interest only payments for 2 years, with principal and interest payments commencing in year 3 based upon a 20 year amortization and a 3 year balloon payment thereafter  (5 year total term).   Additionally, as Credits are sold, Spur Ranch shall receive 75% of all proceeds to be applied to the Class 1 debt as principal reductions. The Debtor anticipates that Spur Ranch will receive in excess of $4 Million in principal reductions prior to the end of 2012.   Upon such principal pay downs, the debt shall be reamortized and payments adjusted accordingly.  The Debtor reserves the right to challenge all or a portion of the Class 1 Claim, specifically any alleged default interest.

(c)    Impairment. Class 1 is impaired.

2.02    Class 2 – Noteholder Claims

(a)    Description.   Class 2 consists of the Note Holder Claims in the approximate aggregate amount of $2.0 Million.

(b)    Treatment.  Each holder of an Allowed Class 2 Claim shall be paid quarterly payments (commencing the first quarter after the Effective Date) based upon 4% interest, interest only payments for 2 years, with principal and interest payments commencing in year 3 and a 3 year balloon payment (total 5 year term).   Class 2 Note Holders shall be paid from the sale proceeds of Credits, after the payments to Spur Ranch or upon additional funding raised or issued by the Reorganized Debtor, if necessary.

2.03    Impairment.  Class 2 is impaired

2.04    Unsecured Claims

(a)    Description. Class 3 consists of Claims of Unsecured Creditors.

(b)    Treatment.  Each holder of an Allowed Class 3 Claim shall receive payment of 50% on the Effective Date and 50% on the one-year anniversary of the Effective Date, plus interest at the Prime Rate as established by the Wall Street Journal.

(c)    Impairment.  Class 3 claims are impaired.

2.05    Class 4 – Equity Security Holders

(a)    Description.  Class 4 consists of the membership interests of the Debtor.

(b)    Treatment.  The holder of the Allowed Class 4 Interests shall retain their membership interests on account of such Interests.

(c)    Impairment.  Class 4 is not impaired.

2.06    Agreement to Less Favorable Treatment

Any Creditor may agree to less favorable treatment than is provided for such Creditor in the Plan.  The obligations of the Debtor under this Plan may be prepaid in full or in part without penalty.

2.07    Satisfaction of Claims

The treatment of and the consideration received by the holders of the Claims and Interests pursuant to this Article 2 of the Plan shall be in full satisfaction, release and discharge of their respective Claims against or Interests in the Debtor and the Estate.

ARTICLE 3    Means For Implementation and Post-Confirmation Operations of the Reorganized Debtor

3.01    Sale of Credits.

As set forth in the Disclosure Statement, the Debtor generates revenue through the sale Credits.   The Debtor will continue to sell Credits to fund the payments as set forth in the Plan and to pay for typical and necessary operating expenses of the Debtor, including maintenance obligations at the Property.    There is a pending sale of 28 District Credits and 3.1 Army Corp of Engineers credits for a total of $1,119,500 ($35,000) per credit and The Debtor is in late stage negotiations with Brevard County for the sale of 50 Credits for the total price of $4,640,000.00. The Debtor will continue its efforts to sell Credits and expects such Credits to occur.  Although the timing of additional sales is not known yet.  Additionally, the Debtor has the ability to raise up to $2 Million in equity or debt financing if such financing is required.  The Debtor anticipates it would take approximately 90 days to raise said funds and the priority or repayment terms would be dependent upon several factors.

3.02    Continuation of Business.  In accordance with, and subject to, the provisions of the Plan, the Reorganized Debtor shall continue to conduct the day-to-day operations of its business.    Necessary expenses for maintenance and marketing of Credits shall be paid in the ordinary course of business.

3.03    Initial Management of the Reorganized Debtor.  The Debtor contemplates continued management by the Debtor through James Rudnick for the necessary operation of the Reorganized Debtor's business.  The Disclosure Statement discloses the identity of affiliations of post-confirmation directors and officers, together with all other information required by section 1129(a)(5) of the Bankruptcy Code.

3.04   <u>Executive Compensation.</u>   The Disclosure Statement discloses that the compensation of the Reorganized Debtor's executive management shall remain consistent with compensation paid prior to the Effective Date.  No Compensation shall be paid to Mr. Rudnick.

3.05.   <u>Causes of Action.</u>   Except as otherwise provided in the Plan and all Actions Action (including Avoidance Actions) shall automatically be retained and preserved and will revest in the Reorganized Debtor.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and have the exclusive right to enforce and prosecute Actions against any Entity.  The Debtor or Reorganized Debtor do not anticipate the pursuit of any Avoidance Actions as the dividend to creditors will be 100%.

<u>3.06   Fee Requests</u>

All Persons entitled to make Fee Requests in the Case shall file their Final Fee Requests and shall cause such Fee Requests to be ruled on by the Court on or before the date of the Confirmation Hearing.

<u>3.07   Executory Contracts</u>

Any lease or executory contract not assumed by order of the Bankruptcy Court or by the terms of the Plan and Confirmation Order confirmed are rejected.

**Proofs of Claim for Rejected Agreements.  Unless otherwise provided by order of the Bankruptcy Court entered before the Confirmation Date, any Claim against the Debtor arising from the rejection of any executory contract or unexpired lease agreement under this Plan must be filed with the Bankruptcy Court within 30 days after the date the Order approving the rejection was entered or on the last date set by the Bankruptcy Court for other parties to file a Proof of Claim, whichever is longer.**

ARTICLE 4   <u>Unclassified Claims and Disputed Claims and Distributions</u>

4.01   <u>Administrative Claims</u>

The Allowed Amount of each Administrative Claim as allowed by order of the Court shall be paid in full in cash on the Effective Date, or upon such terms as the Debtor and the holders of such Claims may agree.  Ordinary Course Administrative Claims shall be paid in accordance with the terms of the contract or agreement between the Estate and any holder of such Claim and in accordance with the legal, equitable and contractual rights of such holder.

4.02   <u>Priority Tax Claims</u>

The unsecured Allowed Claims of governmental units for unpaid taxes, interest and assessments, if any, entitled to priority under Section 507(a)(8) of the Code shall be paid in full in cash on the Effective Date or over time as provided for in the Bankruptcy Code.

<u>4.03   Timing of Distribution</u>.   Except as set forth in the Plan, the distribution of Property will be made to Holders of Allowed Claims and Allowed Interests in accordance with

the Plan.  If a Claim is not an Allowed Claim as of the applicable, distributions will be made only if and when the Claim is Allowed.

4.04    Delivery of Distributions.  The Reorganized Debtor will make distributions to Holders of Allowed Claims and Interests at the addresses set forth on the Proofs of Claim, if any, filed by such Holders or at the last known addresses of such Holders.  If any such Holder's distribution is returned as undeliverable, no further distribution will be made to such Holder unless and until the Reorganized Debtor is notified of such Holder's then current address, at which time all missed distributions will be made to such Holder, without interest.

4.05    Cash Payments.  Cash payments to be made pursuant to this Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Reorganized Debtor.

4.06    Interest on Claims.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, (or any documents in connection therewith) or required by applicable bankruptcy law, Post-Petition Date interest shall not accrue or be paid on Claims (other than Allowed Secured Claims), and no Holder of a Claim (other than Allowed Secured Claims) will be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

4.07    No De Minimus Distributions.  Other than in the Final Distribution, no payment of Cash in an amount of less than $10.00 shall be made on account of any Allowed Claim.  Such undistributed amount will instead be held in escrow and made as part of the Final Distribution, which will be paid to each creditor with an Allowed Claim, regardless of the amount of each dividend.

4.08    Failure to Negotiate Checks.  Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within 60 days after the date of issuance.  Any funds returned by reason of non-negotiated checks shall be held by the Reorganized Debtor until such time as they qualify for unclaimed property, or if earlier, a request for reissuance is received by the Reorganized Debtor.  Requests for reissuance of any such check shall be made, in writing, directly to the Reorganized Debtor  by the Holder of the Allowed Claim with respect to which the check originally was issued.  If any checks remain uncashed or claimed for over 6 months, then the funds shall revert to the Reorganized Debtor

4.09    Compliance with Tax Requirements.  In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Reorganized Debtor shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Reorganized Debtor within thirty (30) days from the date of such request, the Reorganized Debtor may, at its option, withhold the

amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

4.10   No Payment or Distribution Pending Allowance.  All references to Claims and amounts of Claims refer to the amount of the Claim allowed by operation of law, Final Order of the Bankruptcy Court or this Plan.  Accordingly, notwithstanding any other provision in this Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim, unless and until the Disputed Claim becomes an Allowed Claim.  No partial distributions will be made while an Objection is pending to part or all of a Claim.

4.11   Disputed Distribution.  If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Reorganized Debtor may, in lieu of making such distribution to such Holder, make such distribution (or any amount estimated pursuant to section 502(c) of the Bankruptcy Code) into a segregated account until the disposition thereof shall be determined by Final Order of the Bankruptcy Court (or other court of competent jurisdiction) or by written agreement among the interested parties to such dispute.

4.12   Estimation of Disputed Claims.  To effectuate distributions pursuant to this Plan and avoid undue delay in the administration of the Estate, the Reorganized Debtor shall have the right, at any time, to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the Holder of such Disputed Claim and which hearing may be held on an expedited basis), estimating a Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether the Debtor or Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Objection.  All of these Objection and resolution procedures are cumulative and not necessarily exclusive of one another.  In addition to seeking estimation of Claims, the Reorganized Debtor may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Chapter 11 Case had not been commenced, subject only to the terms of this Plan.  Claims may be subsequently compromised, settled, withdrawn or resolved by the Reorganized Debtor, pursuant to this Plan.

4.13   Resolution of Disputed Claims.  Subject to the conditions set forth in this Plan, the Reorganized Debtor will have the right (a) to request estimation of each such Claim, (b) to litigate any Objection to Final Order, (c) to settle or to compromise any Claim, or (d) to withdraw any Objection to any Claim (other than an Allowed Claim or a Claim that is deemed to be allowed pursuant to this Plan or a Final Order).   Pursuant to Local Rules, any objections to Claims shall be filed within 45 days prior to the Confirmation hearing, unless that date is extended by the Court.

4.14   Distributions in Complete Satisfaction.  The distributions and rights provided under this Plan will be in complete satisfaction and release, effective as of the Effective Date, of all Claims against and Interests in the Debtor' s Estate and all liens upon any Property of the Estate.  The Holders of liens satisfied and released under this Plan will execute and deliver, or cause to be executed and delivered, any and all documentation reasonably requested by the Reorganized Debtor evidencing the satisfaction, discharge and release of such liens.

ARTICLE 5    Effect of Confirmation

5.01    Terms Binding

Upon the Effective Date, all of the provisions of this Plan, including all appendices and other exhibits hereto, shall be binding on the Debtor, the Estate, all Creditors, and all other entities who are affected (or whose interests are affected) in any manner by the Plan.

5.02    Automatic Stay Provisions

The automatic stay provisions of Section 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date, provided, however, that such automatic stay shall remain in force as to Disputed Claims until a Final Order has been entered in respect of such Disputed Claims.

ARTICLE 6    Miscellaneous

6.01    Modifications to Plan Prior to Confirmation

At any time prior to the Confirmation Date, the Proponent may modify the Plan, but may not modify the Plan so that the Plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Code.  If the Proponent files a modification with the Court, the Plan as modified shall become the Plan.

6.02    Modifications to Plan After Confirmation

At any time after the Confirmation Date, and before Substantial Consummation, the Proponent may modify the Plan but may not modify the Plan so that the Plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Code.  The Plan as modified under this Section becomes the Plan only if the Court, after notice and a hearing, confirms such Plan, as modified, under Section 1129 of the Code.

6.03    Remedy of Defects

After the Effective Date, the Proponent may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

6.04    Jurisdiction of Bankruptcy Court

Except as is otherwise provided in the Confirmation Order, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    Classification of any Claim, reexamination of any Claim which has been allowed for purposes of voting, and determination of any objection filed to any Claim.  Failure to object to any Claim for the purpose of voting shall not be deemed to be a waiver of the right to object to the Claim in whole or in part.

(b)     Determination of all questions and disputes regarding the Plan, the Debtor or Property of the Estate and determination of all causes of action, controversies, disputes, or conflicts involving the Plan, any Creditor, the Debtor or Property of the Estate arising prior to or on the Effective Date whether or not subject to action pending as of the Confirmation Date including resolution of Disputed Claims.

(c)     Determination of all disputes arising after the Effective Date with respect to the interpretation of the Plan.

(d)     Determination of any Action.

(e)     Determination of any issue, violation, injunction, contempt, relief, or other proceeding as contemplated under Section 362 of the Bankruptcy Code.

(f)     Correction of any defect, curing of any omission of reconciliation of any inconsistency in the Plan or in the Confirmation Order as may be necessary or appropriate to carry out the purposes and intent of the Plan.

(g)     Modification of the Plan after the Confirmation Date pursuant to the provisions of the Plan, the Code and the Rules.

(h)     Interpretation of the Plan.

(i)     Entry of any order, including a mandatory injunction or restraining order, required to facilitate consummation of the Plan or to enable the Effective Date to occur; and reconsideration or vacation of the Confirmation Order in the event Substantial Consummation is rendered impossible.

(j)     Entry of a final decree closing the Case.

6.05   _Withdrawal of the Plan_.  The Debtor or Reorganized Debtor reserves the right, at any time prior to the Substantial Consummation of the Plan, to revoke or withdraw the Plan.  If the Plan is revoked or withdrawn or if Confirmation does not occur, the Plan shall be null and void and have no force and effect.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

6.06   _Final Order_.  Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtor or Reorganized Debtor upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

6.07 <u>Business Days.</u> If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.08 <u>Severability.</u> Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which the provision is illegal. Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Debtor reserves the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

6.09 <u>Governing Law</u>. EXCEPT TO THE EXTENT THAT (i) THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, OR (ii) THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN PROVIDE THAT THE LAW OF A DIFFERENT JURISDICTION SHALL GOVERN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS-OF-LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

6.10 <u>Notices</u>. Any notice required or permitted to be provided under the Plan shall be in writing and served:

> To the Debtor, c/o:
>
> **BERGER SINGERMAN, P.A.**
>
> Brian G. Rich, Esq.
>
> 125 S. Gadsden Street, Suite 300
>
> Tallahassee, Florida 32301
>
> Telephone: (850) 561-3010
>
> Facsimile: (850) 561-3013

6.11 <u>Filing of Additional Documents.</u> On or before Substantial Consummation of the Plan, the Debtor or Reorganized Debtor shall issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

6.12   <u>Time.</u>   Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day.  Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

6.13   <u>Saturday, Sunday or Legal Holiday.</u>   If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.14   <u>No Attorneys' Fees.</u>   No attorneys' fees will be paid by the Debtor or Reorganized Debtor with respect to any Claim or Interest except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

6.15   <u>Successors and Assigns</u>.   The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

6.16   <u>Preservation of Rights of Setoff</u>.   The Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the Holder of such Claims; but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such Holder.

6.17   <u>No Injunctive Relief</u>.   No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

6.18   <u>No Admissions</u>.   Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

6.19   <u>Entire Agreement</u>.   The Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.  The Debtor shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

6.20   <u>Waiver</u>.   The Debtor reserves its right, in its sole discretion, to waive any provision of the Plan to the extent such provision is for the sole benefit of the Debtor.

6.05   <u>Savings Clause</u>

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

6.06    Vesting of Assets.  On the Effective Date and except as otherwise provided in the Plan, all the Property of the Estate will vest in the Reorganized Debtor free and clear of any and all Liens, Claims, and other interests of every kind and nature, including causes of action and claims for relief on account and in respect of the provisions of sections 362, 505, 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Code and any causes of action or claims for relief existing under state or other federal law. Pursuant to, among other authority, section 1123(b)(3)(B) of the Code, the Reorganized Debtor, for and on behalf of the Debtor's estate, shall have the power, authority and standing to prosecute, compromise or otherwise resolve such claims, with all proceeds derived therefrom, subject to the provisions of the Plan.  The Reorganized Debtor shall operate and manage the Debtor's property and make all distributions in accordance with the terms of the Plan.

6.07    No Admissions

The preparation and filing of this Plan and the Disclosure Statement were undertaken, in part, as a means of settling disputes among various parties in interest in the Case and is offered by the Proponent, in part, as an offer in compromise by the Proponent in the Plan to other parties in interest in the Case.  No statement or omission by Proponent in the Plan or the Disclosure Statement, including any statement concerning the estimated Allowed Amount of any Claim, shall preclude or estop the Proponent from objecting to any Claim, and no such statement or omission shall constitute, or be deemed to constitute, any type of admission, waiver or estoppel on the part of the Proponent, and nothing stated or unstated by the Proponent shall be admissible against the Proponent except in the hearings on the adequacy of the Disclosure Statement and the confirmation of the Plan.

6.08    Section 1146(a).  Pursuant to section 1146(a) of the Code, the making or delivery of an instrument of transfer under a plan confirmed in a chapter 11 bankruptcy case, may not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Refinancing or a sale of property is an essential part of this Plan. Therefore, pursuant to federal law under 11 U.S.C. § 1146(a), documents or instruments of transfer pertaining to a refinancing or sale  of the property that will inevitably require recording will be protected from otherwise applicable Florida law regarding the payment for documentary tax stamps.

ARTICLE 7    Notice of Intent to Request Cramdown

7.01    In the event that a sufficient number of holders of any impaired Class of Claims do not accept the Plan, the Proponent hereby gives notice that it will request, and does hereby request, confirmation of the Plan pursuant to 11 U.S.C. § 1129(b), commonly referred to as the "cramdown" provision of the Bankruptcy Code.  The Debtor hereby reserves the right to modify or vary the treatment of the Claims as to comply with 11 U.S.C. § 1129(b).

ARTICLE 8    Payment of US Trustee Fees

8.01    Notwithstanding any other provision of this Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6), within ten (10) days from the entry of an order confirming this Plan, for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the

cash disbursements for the relevant period.  The Debtor, as a reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6), based upon post-confirmation disbursements made by the reorganized debtor, until the earlier of the closing of this case by the issuance of a final decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the reorganized debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

## CONFIRMATION REQUEST

The Debtor hereby requests confirmation of the Plan pursuant to section 1129(a) or, in the event that the Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

BERGER SINGERMAN
Attorneys for Debtor
125 South Gadsden Street, Suite 300
Tallahassee, FL  32301
Telephone:  (850) 561-3010
Facsimile:  (850) 561-3013


By: /s/ Brian G. Rich
    Brian G. Rich
    Florida Bar No. 038229
    *brich@bergersingerman.com*


THE MARY A II, LLC

By: _____

Its: Managing Member

**<u>EXHIBIT "B"</u>**

MARY A MITIGATION BANK CHART
OPEN and DISBURSED MATTERS

<u>DISTRICT CREDITS</u>                              <u>ACOE CREDITS</u>
CREDITS RELEASED        - 302.90              CREDITS RELEASED _____
CREDITS RELEASES 9/18/07  - 404.39
TOTAL CREDITS RELEASED - 707.29

PREVIOUS ATTORNEY'S LEDGER OF CREDITS

| PURCHASER | PERMIT NO. SJRWMD/ACOE | DEPOSIT | DATE DEP. REC'D | FINAL PAYMENT/ DISBURSEMENT | CREDITS DISTRICT/ACOE |
|---|---|---|---|---|---|
| | 4-009-86569-2 | $3,200.00 | 3/31/03 | $2,800.00 Disbursed 2/27/04 | 0.3 |
| | 4-009-86250-1 | $4,000.00 | 6/19/03 | $36,000.00 Disbursed 2/27/04 | 2.0 |
| | | $1,200.00 Extension $1,200.00 | 9/29/03 7/8/04 | $10,800.00 (7/8/04) Disbursed 9/14/04 | 0.6 |
| | 4-009-88014-1 | $7,600.00 | 7/2/03 | $68,400.00 Disbursed 2/27/04 | 3.8 |
| | 4-009-89300-1 | $3,400.00 | 8/11/03 | $30,600.00 Disbursed 2/27/04 | 1.7 |
| | 4-009-90425-1 | $600.00 | 12/2/03 | $118,800.00 Disbursed 9/14/04 | 6.6 |
| | 4-009-90239-1 | $23,000.00 | 12/5/03 | $137,000.00 Disbursed 9/14/04 | 8.0 |

1

V0039862v1

| (Note: Agreement initially for 11.5 but purchased 8) | | | | | |
|---|---|---|---|---|---|
| ██████████ ⬛ y ██████████ ██████ vd. ███████ ██████ ████(██████████) | 4-009-16882-4 & 4-009-16882-6 | | 3/23/04 | $64,000.00 Disbursed 5/11/04 | 4.0 |
| | | | | $73,600.00 Disbursed 5/11/04 | 4.6 |
| ██████████ chart | | | | 2/27/04 | 7.8 |

2

DEAN MEAD'S LEDGER

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRICT/ ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| [redacted] | Fully executed 5/12/04 | $14,000.00 5/12//04 | 126,000.00 12/1/04 Disbursed 12/15/04 | 7.0 | | Sent by DME | Sent by DME 12/15/04 |
| [redacted] | Fully executed But not dated | $12,000.00 5/28/04 | $108,000.00 11/24/04 Check date- 11/05/04 Disbursed 12/15/04 | 6.0 | | Sent by DME | Sent by DME 12/15/04 |
| [redacted] | Fully executed 7/20/04 | $3,400.00 7/12/04 | $30,600.00 11/24/04 Check date- 10/26/04 Disbursed 12/15/04 | 1.7 | | Sent by DME | Sent by DME 12/15/04 |
| [redacted] | Fully executed 6/8/04 | $4,000.00 6/08/04 $4,000.00 1/26/05 (extension fee) | $32,000.00 check date 5/6/05 Recv'd 5/10/05 Disbursed 5/24/05 | 2.0 | | Sent by DME | Sent by DME 5/24/05 |

3

| PURCHASER | AGREE-MENT | DEPOSIT/DATE RECV'D | BALANCE/DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS | BAL-ANCE LETTERS | DISBURSE-MENT LETTERS |
|---|---|---|---|---|---|---|---|
| ███████ | Fully executed 10/7/04 | $10,000.00 Check date-10/24/04 | $90,000.00 recv'd 4/28/05 check date 4/8/05 Disbursed 5/11/05 | 4.0 | Sent by DME | Sent by DME 5/3/05 | Sent by DME 5/11/05 |
| ███████ | Fully executed 12/2/04 | $6,000.00 11/29/04 | $54,000.00 2/07/05 Disbursed 2/18/05 | 3 | Sent by DME | Sent by DME | Sent by DME 2/18/05 |
| ███████, Jr. | Fully executed 3/11/04 4/28/04 | $3,000.00 3/11/04 (potentially forfeited) $3,000.00 4/28/04 | 54,000.00 12/14/04 Disbursed 12/21/04 | 1.5 1.5 | | Sent by DME | Sent by DME 12/21/04 |
| ███████ LLC | Fully executed 9/8/03 (but no ERP permit N0.) | $6,000.00 9/8/03 $6,000.00 3/4/04 (deposit for 180 day extension) | $48,000.00 2/11/05 Disbursed 2/18/05 | 3.0 | | Sent by DME | Sent by DME 2/18/05 |

4

| PURCHASER | AGREEMENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRC T/ACOE | DEPOSIT LETTERS | BALANCE LETTERS | DISBURSEMENT LETTERS |
|---|---|---|---|---|---|---|---|
| ▓▓▓▓ | Fully executed (no ERP permit No) | $600.00 12/2/03 | | .3 | | | Disbursement non-refundabl deposit Sent b DME 7/5/06 |
| ▓▓▓▓ | Fully executed 1/6/05 | $1,250.00 1/6/05 | $11,250.00 4/8/05 rec'vd 4/13/05 Disbursed 5/2/05 | .5 | Sent by DME | Sent by DME | Sent by DME 5/2/05 |
| ▓▓▓▓ | Fully executed 1/6/05 | $250.00 1/6/05 Disbursed 1/28/05 | $2,250.00 1/17/05 | .1 | Sent by DME | Sent by DME | Sent by DME 1/28/05 |
| ▓▓▓▓ | Fully executed 1/12/05 ERP 4-009-63572-13 | $5,750.00 1/12/05 $5,750.00 5/24/05 (add'l 180 days) | $46,000.00 8/10/05 Disbursed 8/19/05 Resent: 9/1/05 | 2.3 | Deposit Letters Sent | Sent by DME | Sent By DME 8/19/05 9/1/05 |
| ▓▓▓▓ | Fully executed 1/31/05 ERP-4-009-95032-1 | $7,000.00 1/31/05 | $63,000.00 5/3/05 check date 4/29/05 Disbursed 5/11/05 | 2.8 | Deposit Letters sent | Sent by DME | Sent by DME 5/11/05 |

V0039862v1

| PURCHASER | AGREEMENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS | BALANCE LETTERS | DISBURSEMENT LETTERS |
|---|---|---|---|---|---|---|---|
| ███████ ty | Fully executed 1/31/05 ERP- 4-009-92377-1 | $3,750.00 1/31/05 | $33,750.00 7/6/05 Disbursed 7/15/05 | 1.5 | Deposit letter sent | Sent by DME | Sent by DME 7/15/05 |
| ███████ 52 | Fully executed 2/24/05 ERP-40-009-94208-1 | $9,000.00 2/24/05 | $81,000.00 5/17/05 Disbursed 5/24/05 | 3.6 | Deposit Letter sent | Sent by DME | Sent by DME 5/24/05 |
| Manager ███ I███ I███ F███ | Fully executed 3/31/05 4-009-96593-1 | $9,175.00 3/31/05 | $82,575.00 6/13/05 Disbursed 7/8/05 | 3.67 | Deposit letter sent | Sent by DME | Sent by DME 7/8/05 |
| ███████ 3████████ AV M███ | Fully executed 3/31/05 4-009-95308-1 | $32,500.00 3/31/05 | $295,000.00 9/26/05 Disbursed 9/30/05 | 13 | Deposit letters sent | Sent by DME | Sent by DME 9/30/05 |
| 3█████ A█████ M███ | Fully executed 4/15/05 05-244269-001 | $250.00 4/15/05 | $2,250.00 4/28/05 Recv'd 5/3/05 Disbursed 5/11/05 | .1 | Deposit letter sent 4/15/05 | Sent by DME 5/3/05 | Sent by DME 5/11/05 |
| ███████ J███████, Jr. I███ M███ | Fully executed 4/18/05 ERP: 4-009-16651-5 | | $12,500.00 4/18/05 Disbursed 5/2/05 | .5 | NO Deposit Full Payment | Sent by DME | Sent by DME 5/2/05 |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS | BAL-ANCE LETTERS | DISBURSE-MENT LETTERS |
|---|---|---|---|---|---|---|---|
| ██████████ | Fully executed 6/1/05 ERP. No. 40-009-96253-1 | $2,500.00 6/1/05 Additional deposit $2,500.00 12/1/05 - | $20,000.00 6/16/06 | 1.0 | Sent By DME 6/1/05 | Sent by DME 6/20/06 | Sent DME 6/28/06 |
| ██████████ | Fully executed 6/30/05 ERP No. 4-009-15821-6 | $8,000.00 6/30/05 Additional Deposit $8,000.00 12/30/05 | $64,000.00 received 6/29/06 | 3.2 | Sent by DME 6/30/05 Sent by DME 1/5/06 | Sent by DME 6/29/06 | Sent by DME 7/5/06 |
| ██████████ | Fully executed 6/28/05 ERP No. 05-1712 | | $2,500.00 6/28/05 Disbursed 7/8/05 | .1 | Full Payment | Sent by DME | Sent by DME 7/8/05 |
| ██████████ | Fully executed 7/14/05 ERP No. 4-009-92272-1 | $12,250.00 7/14/05 Additional Deposit $12,250.00 11/15/05 | $98,000.00 full payment 1/18/2006 | 4.9 | Sent by DME 7/15/05 Sent by DME 11/16/05 | Sent by DME 1/20/06 | Sent by DME 1/26/06 |
| ██████████ | Fully executed 7/14/05 ERP No. 40-009-24098-4 | $1,750.00 7/14/05 Additional Deposit $1,750.00 11/15/05 | $14,000.00 4/17/06 | .7 | Sent by DME 7/15/05 Sent by DME 11/16/05 | Sent by DME 4/18/06 | Sent by DME 4/20/06 |

7

| PURCHASER | AGREE-MENT | DEPOSIT/DATE RECV'D | BALANCE/DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS | BAL-ANCE LETTERS | DISBURSE-MENT LETTERS |
|---|---|---|---|---|---|---|---|
| ███████ Melbourne FL 32908 ███████ | Fully executed 8/2/05 Consent order No. 05-248980-001 | Full payment | $5,000.00 Disbursed 8/19/05 Resent: 9/1/05 | .2 | Full payment | Sent by DME 8/4/05 | Sent by DME 8/19/05 9/1/05 |
| ███████ Clelo. ███████ some l ███████ ...d, V...e ...me Florida | Fully executed 9/7/05 ERP Permit No. 40-009-95641-1 | $11,750.00 9/7/05 | $105,750.00 3/3/06 | 4.7 | Sent by DME | Sent by DME 3/5/06 | Sent by DME 3/10/06 |
| ███████ | Fully executed 9/20/05 ERP No. 04-061-97246-1 | $19,750.00 9/20/05 | $177,750.00 full payment 2/1/06 | 7.9 | Sent by DME 9/20/05 | Sent by DME 2/3/06 | Sent by DME 3/1/06 |
| ███████ | Fully executed 10/5/05 ERP No. 04-009-98092-1 | $2,500.00 10/5/2005 | 22,500.00 3/23/06 | 1.0 | Sent by DME 10/05/05 | Sent by DME 3/27/06 | Sent by DME 4/5/06 |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| | Fully executed 9/20/05 Consent Order No. OGC-05-1080 | | $7,500.00 Full Payment 9/20/05 Disbursed 9/30/05 | .3 | Full payment | Sent by DME 9/20/05 | Sent by DME 9/30/05 |
| | Fully executed 11/2/05 ERP No. 4-0090-99757-1 | $500.00 deposit 10/27/05 | $4,500.00 full payment 12/30/05 Disbursed 1/9/06 | .2 | Sent by DME 11/2/05 | Sent by DME 1/5/06 | Sent by DME 1/9/06 |
| | Fully executed 11/2/05 ERP No. 31-245235-002 | $500.00 deposit 11/2/05 | $4,500.00 full payment 2/7/06 | .2 | Sent by DME 11/3/05 | Sent by DME 2/7/06 | Sent by DME 03/01/06 |
| | Fully executed 11/2/05 ERP No. 31-253587-001 | $500.00 deposit 11/2/05 | $4,500.00 Full Payment 12/14/05 | .2 | Sent by DME 11/4/05 | Sent by DME 12/14/05 | Sent by DME 12/20/05 |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| ▮▮▮▮▮▮ | Fully executed 11/2/05 ERP No. 31-253586-001 | $1,250.00 deposit 11/2/05 | $11,250.00 Full payment 12/14/05 | .5 | Sent By DME 11/4/05 | Sent by DME 12/14/05 | Sent by DME 12/20/05 |
| ▮▮▮▮▮▮ | Fully executed 11/21/05 DEP No. 05-253989-001 | | $5,000.00 Full Payment 11/21/05 Disbursed 12/05/05 | .2 | Full payment | Sent by DME 11/29/05 | Sent by DME 12/05/05 |
| ▮▮▮▮▮▮ | Fully executed 12/8/05 ERP No. Pending | $12,750.00 deposit 12/8/05 | | 0 | Sent by DME 12/9/05 | | Forfeit - disbursed deposit 7/25/0 |
| ▮▮▮▮▮▮ | Fully executed 12/14/05 ERP 4-009-94151-1 | $15,000.00 Deposit 12/14/05 | $135,00.00 Full payment 5/16/06 | 6.0 | Sent by DME 12/16/05 | Sent by DME 5/17/06 | Sent by DME 5/25/06 |
| ▮▮▮▮▮▮ | Fully executed 6/12/06 | 2,400.00 Deposit 6/12/06 | | 0.8 | Sent by DME 6/12/06 | | Sent by DME 9/6/06 |

10

| PURCHASER | AGREE-MENT | DEPOSIT/DATE RECV'D | BALANCE/DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| | Rec'd 12/28/05 ERP 4-009-101697-1 Fully executed 01/3/06 | $7,500.00 Deposit 12/28/05 | $67,500.00 6/9/06 | 3.0 | Sent by DEM 1/5/06 | Sent by DME 6/9/06 | Sent by DME 6/28/06 |
| | Fully executed 4/10/06 | $2,400.00 Deposit-4/10/06 | $21,600.00 6/9/06 | 0.8 | Sent by DME 4/10/06 | Sent by DME 6/9/06 | Sent by DME 6/28/06 |
| | Rec'd 12/29/05 ERP 4-009-92240-1 Fully executed 1/3/06 | $25,050.00 Deposit 12/29/05 $25,050.00 Additional Deposit 7/20/06 | 202,400.00 12/15/2006 | 10.10 | Sent by DME 1/5/06 Sent by DME 8/2/06 | Sent by DME 12/20/06 | Sent by DME 12/20/06, |
| | Rec'd 12/30/05 ERP Pending Fully executed 1/3/06 | $25,000.00 Deposit 12/30/05 Remaining Deposit $22,750.00 Additional Deposit $22,750.00 7/3/06 | $179,750.00 12/28/06 Bal due of $2,250.00 $2,250.00 1/5/06 | 9.1 | Sent by DME 1/5/06 | Sent by DME 1/11/07 | Sent by DME 1/4/07 Balance Sent DME 1/24/07 |
| | | Designation of $2,250.00 3/16/06 | 4-14-06 $20,250.00 | (0.9) Design 3/16 | Design. Sent by DME 3/17/06 | (0.9) Sent 4-17-06 | Sent by DME 4/20/06 |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| ▓▓▓▓▓▓▓▓▓ (▓▓▓) ▓▓▓-▓▓▓▓ ▓▓ck | Rec'd 12/30/05 ERP Pending Fully executed 1/3/06 | $75,000.00 deposit 12/30/05 Bal. 38,750.00 Additional Deposit $75,000.00 7/3/06 Bal. 38,750.00 | WITHDRA WAL OF 10 CREDITS BALANCE 5.5 CREDITS | 5.5 | Sent by DME 1/5/06 Sent by DME 7/5/06 | | Sent by DME 1/24/07 |
| | ERP 4-009-96853-1 | 72,500.00 Note: designated to The Villages Project | | 14.5 | Sent by DME 10/12/06 | | Sent by DME 1/24/07 |
| ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ | Rec'd 12/30/05 ERP Pending Fully executed 1/3/06 | $75,000.00 deposit 12/30/05 Remainder $50,750.00 Additional Deposit $75,000.00 7/3/06 Remainder $50,750.00 | WITHDRA WAL OF 20.3 credits 12/20/06 Return 50% of deposit (applied to RDR) | 0 | Sent by DME 1/5/06 Sent by DME 7/5/06 | | Disburse depo by DME on 1/4/07 |
| | Fully executed 11/3/06 | Note: 1.9 credits assigned to R&D Investment Co. | | | Sent by DME 11/3/06 | | |
| | Fully executed 11/15/06 | 7.8 credits assigned to Town Center Partners, Ltd. | | | Sent by DME 11/20/06 | | |

12

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| | Rec'd 2/21/06 ERP - 31-253588-001 | | $15,000.00 2/21/06 | 0.5 | | Sent by DMB 2/22/06 | Sent by DME: |
| | Fully executed 3/13/06 ERP - 05-260282-001 | | $3,000.00 3/10/06 | 0.1 | | Sent by DMB 3/15/06 | Sent by DME 3/23/06 |
| | Fully executed 3/17/06 ERP - 4-009-101710-1 | $21,600.00 3/17/06 | $194,400.00 11/28/06 | 7.2 | Sent by DMB 3/17/06 | Sent by DMB 12/4/07 | Sent by DME 12/4/06 |

V0039862v1

| PURCHASER | AGREEMENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BALANCE LETTERS (2) | DISBURSEMENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| | Fully Exec. 4/14/06 ERP - 4-009-96253-1 | $600.00 deposit 4/12/06 | | 0.2 | Sent by DME 4/14/06 | Sent by DME 10/9/06 | Sent by DME 10/13/06 |
| | Fully Exec 6/20/06 ERP-009-104215-1 | $29,700.00 deposit 6/20/06 | $267,300.00 8/21/26 | 9.9 | Sent by DME 6/20/06 | | Sent by DME 9/6/06 |
| | Fully executed 6/27/06 DEP No 05-256036-001 | $6,000.00 6/27/07 | | 0.2 | | Sent by DME 6/28/06 | Sent by DME 8/23/06 |
| | Fully executed 7/14/06 ERP 4-061-186407 | $1,250.00 6/27/06 | $11,250.00 10/12/06 | 0.5 | Sent by DME 7/14/06 | Sent by DME 10/13/06 | Sent by DME 10/19/06 |

14

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| ████████ | Fully executed 8/7/06 4-009-92272-3 Am. to Reserv. 10/ /06 | $28,925.00 10/22/2007 $2,225.00 12/7/07 $31,150.00 6/16/08 3.9 Deposit remaining 27,300.00 | | 3.9 Forfeti ed | 12/20/07 | | |
| ████████ | | 35,000.00 deposit designated 6/19/08 | 112,700.00 12/30/09 | 5.0 | Design. Letter sent 6/19/08 | | |
| ████████ (RP-92272-3) | | $72,000.00 11,700.00 10/23/06 $83,700.00 2/6/07 90,675.00 8/3/07 2nd extension per agreement (Increase to $32,500.00 per credit) | $359,425.00 10/22/2007 | 19 Split 3.9 and 15.1 Total Reser-27.9 Total purch. 24 | Sent by DME 8/10/06 Sent by DME 11/1/06 Sent by DME 8/3/07 | Sent by DME 10/24/07 | Sent by DME 11/2/07 |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| | Fully executed 7/12/06 Brevard Co. Code Enf. Case 05-1425 | $15,000 7/12/06 | 7/12/06 | 0.5 | | | Sent by DME 8/16/06 |
| | Fully executed 9/25/06 ERP 4-009-103676-0 | $9,900 8/17/06 $9,900 3/17/07 | 10/22/07 | 3.3 | Sent by DME 9/25/06 | Sent by DME 10/24/07 | Sent by DME 11/2/07 |
| | Fully executed 9/7/06 ERP 4-009-63572-25 | $15,000 8/23/06 | $293,700.00 11/30/06 | 5.0 | Sent by DME 9/11/06 | Sent by DME 12/4/06 | Sent by DME 12/4/06 |
| | Fully executed 11/15/06 effective 1/3/06 | $19,500 1/3/06 $19,500 6/29/06 assigned by MWP | | 7.8 | Sent by DME 11/20/06 | | |
| | Fully executed 11/20/06 | $300.00 11/20/06 | | .1 | Sent by DME 11/20/06 | | |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS<br><br>DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| ███ | Fully executed 9/8/06 OGC Case No. 06-0706 | | $75,000.00 9/8/06 | 2.5 | | Sent 9/13/06 | Sent by DME |
| ███ | Fully executed 9/27/06 ERP 4-009-99689-1 | $1,800 9/27/06 | $16,200 1/24/07 | 0.6 | Sent by DME 10/13/06 | Sent by DME 2/8/07 | Sent By DME 2/8/07 |
| ███ | Fully executed 10/11/06 ERP4-009-101699 | $5,700.00 | 51,300.00 11/30/06 | 1.9 | Sent by DME 10/13/06 | Sent by DME 12/4/06 | Sent by DME 12/4/06 |
| ███ | Assign fully executed 11/3/06 Credits purchas e 1/3/06 | $4,750.00 1/6/06<br><br>$4,750.00 6/29/06 | 38,000.00 2/6/07 | 1.9 | Sent by DME 11/3/06 | | Sent by DME 2/20/07 |
| ███ | Fully executed 12/4/06 ERP No. 4-009-15821-9 | $16,200.00 11/16/06 $1,800.00 12/4/06 additional: $18,000.00 6/8/07 | $144,000.00 12/10/2007 | 6.0 | Sent by DME 12/4/06<br><br>Sent by DME 6/8/07 | Sent by DME 12/10/07 | Sent by DME 12/13/07 |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| | Fully executed 12/11/06 | $3,000.00 12/11/06 | | 0.1 | | Sent by DME 12/13/06 | Sent by DME 12/20/06 |
| | fully executed 1/3/07 ERP 4-009-106873-1 | $14,400.00 12/22/06 $14,400.00 4/30/07 $14,400.00 6/18/07 $14,400.00 6/18/07 | 230,400.00 12/07/07 | 9.6 | Sent by DME 1/4/07 | Sent by DME 12/7/07 | Sent by DME 12/13/07 |
| | fully executed 1/3/07 ERP 4-009-90609-1 | $4,500.00 received 12/22/06 | 40,500.00 received 7/3/07 | 1.5 | Sent by DME 1/04/07 | | Sent by DME 7/5/07 |
| | fully executed 1/3/07 OCD-ERP-06-0721 | | 3,000.00 12/19/06 | 0.1 | Sent by DME 1/8/07 | Withdrawal letter sent 1/8/07 | Sent by DME 1/24/07 |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| ███████ | OCD-ERP-06-712 Fully executed 1/3/07 | | 3,000.00 12/-/06 | 0.1 | Sent by DME 1/8/07 | Withdra wal letter sent 1/8/07 | Sent by DME 1/24/07 |
| ███████ | Fully executed 1/10/07 ERP 31-026078-001 | | $3,000.00 1/10/07 | 0.1 | sent by DME 1/17/07 | Withdra wal letter sent 1/17/07 | Sent by DME 1/24/07 |
| ███████ | Fully executed 2/1/07 ERP 4-009-106760-1 | $6,900.00 $1,050.00 1/16/07 $100.00 1/25/07 | 3/22/07 | 2.3 | Sent by DME 2/6/07 | Sent by DME 3/28/07 | Sent by DME 2/28/07 |
| ███████ | Fully executed 2/7/07 ERP 4-009-83724-6 | FORFEIT $16,450.00 2/7/07 Adtl. $1,400.00 8/23/07 | | 4.7 adtl. 0.4 | Sent by DME 2/7/07 Sent by DME 8/24/07 | | Released Depo to 2/12/08 *It is understo by the parties should Huntington II purchase credi the future, the deposit will be applied to that purchase. |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| ███████ | Fully executed 7/23/07 ERP 4-009-111704-1 Add. 9/24/07 reducing amount of credits from 6.3 to 4.2 | $22,050.00 7/12/07 | 124,950.00 10/11/07 | 4.2 | Sent by DME 7/24/07 | Sent by DME 10/17/07 | Sent by DME 10/17/07 |
| ███████ | fully executed ERP 40-009-15955-12 | $1,400.00 8/17/07 Addl. Dep. $1,400.00 3/14/08 | $11,200.00 4/7/08 | 0.4 | Sent by DME 8/21/07 Sent 3/17/08 by DME | Sent by DME 4/9/08 | Sent by DME 4/16/08 |
| ███████ | fully executed 8/28/07 ERP 40-009-111957-1 | 21,350.00 8/28/07 | $192,150.00 2/26/08 | 6.1 | Sent by DME 8/30/07 | Sent 2/27/08 by DME | Sent 3/4/08 by DME |

20

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | BAL-ANCE LETTERS (2) | DISBURSE-MENT LETTERS (2) |
|---|---|---|---|---|---|---|---|
| ████ 82904 SJRWM D ENF. CODE 009-508590 | fully executed 9/20/07 | $7,000.00 | $63,700.00 12/4/07 | 2.0 | DME SENT 9/21/07 | DME SENT 12/5/07 | Sent by DME 12/13/07 |
| ████ 48 ████ 01 | fully executed 11/16/07 | 11/16/07 $74,200.00 | 3/24/08 667,800.00 | 21.2 | Letter sent 11/16/07 | Sent by DME 3/26/08 | Sent by DME 3/27/08 |
| ████ C ████ 2 R ████ | Fully executed 11/27/07 ERP 111024-1 | 11/19/07 $1,750.00 | | 0.5 | Letter sent 11/27/07 | | Letter Sent by DME 6/2/08 |
| ████ | Fully executed 12/20/07 | 1/10/08 $3,500.00 | | 0.1 | | Letter sent 1/10/08 | Letter sent by DME 1/18/08 |
| ████ | Fully executed 12/21/07 | 1/20/08 $3,500.00 | | 0.1 | Sent by DME 1/10/08 | | Sent by DME 1/22/08 50% to Federa Trust Bank |

21

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | Withdraw al LETTERS (1) | DISBURSE-MENT LETTERS (3) |
|---|---|---|---|---|---|---|---|
| ▉▉▉▉▉ | Fully executed 2/28/08 DEP Consent 05-1578 | 2/28/08 $16,000.00 | 2/28/08 | 0.4 | Sent 3/3/08 | Sent 3/4/08 | Sent 3/6/08 by DME |
| ▉▉▉▉▉ | Fully executed 4/8/08 4-009-112904-1 | 4/8/08 $6,400.00 | 5/8/08 | 1.6 | Sent 4/8/08 | | Sent by DME 5/15/08 |
| ▉▉▉▉▉ | Fully executed 6/20/08 4-009-115034-1 | 6/20/08 $42,000.00 additional reservation 7/2/08 $800.00 Additional Deposit $42,800.00 12/17/08 6/22/09 Additional Deposit $42,800.00 Add'l Deposit (4th Extension) 12/20/09 $42,800.00 | | 10.5 0.2 | Sent by DME 6/20/08 Sent by DME 7/2/08 addition al Dep. Ltr sent 12/18/08 | | Sent by DME 6/29/09 |
| ▉▉▉▉▉ | Partial Execute d 8/4/08 Pending initial of correct, 40-009- | 8/4/08 $8,000.00 | 12/9/09 $72,000.00 | 2.0 | Sent by DME 8/5/08 | Sent by DME 12/10/08 | Sent by DME 12/18/08 |

V0039862v1

| | 102771-2 | | | | | | |
|---|---|---|---|---|---|---|---|
| ████ | 102771-2 | | | | | | |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | Withdrawal LETTERS (1) | DISBURSE-MENT LETTERS (3) |
|---|---|---|---|---|---|---|---|
| ▉▉▉▉▉ | Execute 12/5/08 40-009-102771-1 | 12/04/08 $4,400.00 | | 1.1 | Sent by DME 12/5/08 | | |
| | | 6/1/09 Extension $4,400.00 | | | Sent by DME 6/2/09 | | |
| | | Addt'l 10% deposit of $4,400.00 recv'd 1/5/10 | | | Sent by DME 1/5/10 | | |
| | | Addt'l 10% $4,400.00 6/2/2010 | | | | | |
| ▉▉▉▉▉ | Fully executed 4/10/09 | $400.00 4/10/09 | | .1 | Sent by DME 4/10/09 | Sent by DME 6/10/09 | Sent by DME 6/19/09 |
| ▉▉▉▉▉ | Fully executed 5/14/09 | $9,600.00 5/14/09 | | 2.4 | Sent by DME 5/15/09 | | Sent by DME 10/15/09 |
| ▉▉▉▉▉ | Fully Executed | $7,600.00 7/3/09 Add'l Deposit $7,600.00 1/20/10 | | 1.9 | Sent by DME 7/6/09 Sent by DME 2/1/10 | | |

V0039862v1

| PURCHASER | AGREE-MENT | DEPOSIT/ DATE RECV'D | BALANCE/ DATE RECV'D | CREDITS DISTRIC T/ACOE | DEPOSIT LETTERS (1) | Withdraw al LETTERS (1) | DISBURSE-MENT LETTERS (3) |
|---|---|---|---|---|---|---|---|
| | Fully Executed 2/19/10 (SAJ-2010-00016) | | $4,000,00 2/19/10 | 0.10 ACOE | | Sent by DME 2/23/210 | |
| | 3/17/10 Deposit N/A Funds are Credited - Reservation Ltr sent on 3/18/10 | | | .2 | | | |
| | Fully executed: 5/26/10; ERP Permit #: 05-3001715-001 | $400.00 | 5/27/10 | .10 | Sent by DME 5/27/10 | Sent by DME 7/15/10 | Sent by DME 7/15/10 |
| | Fully executed 06/21/10 ERP 10 SP - 00105 | $800.00 6/21/10 | | .20 | | | |
| (772) 299-4791 | | | | | | | |
| , Inc | Fully Executed 7/27/10 ERP 40-009-32841-3 ACOB SAJ-2009-04026 | $3,450.00 7/7/10 | | 0.8 Distric t 0.5 ACOB | Sent DME 7/23/10 and 7/27/10 | | |

V0039862v1

**<u>EXHIBIT "C"</u>**

## John C. Kurtz, Receiver
## Federal Trust Bank (Spur Ranch) vs. Mary A. II, et al
## Case No. 2010-CA-032241

**The Circuit Court of the 18th Judicial Circuit,**
**in and for Brevard County, Florida**
**Harry T. and Harriette V. Moore Justice Center**
**2825 Judge Fran Jamieson Way**
**Viera, Florida 32940-8006**

### Report to the Court
### July 1, 2011

Dear Judge Turner,

The court heard this case on May 25, 2011. Your appointment of me as Receiver was entered on June 7, 2011, and I was notified by the Plaintiff's on June 10, 2011. I received a copy of the Order on June 13, 2011, and received my first access to the Plaintiff's records on June 14, 2011.

I have been engaged in attempting to perform my duties under the Order since that time. I have encountered a few difficulties in performing my duties and I have elected to report as of July 1, 2011, to all parties to gain clarification and assistance in completing my duties. I will detail those items later in my report.

### Oath of Receiver

The enclosed oath was executed and is made a part of this first report.

### Bond

Pursuant to the Order, no bond is required.

### Accounts

I have made a request for financial records through defendant's legal counsel on June 16, 2011. I was finally supplied a copy of a May bank statement from Federal Trust Bank. Enclosed is a copy of the statement and my request letter to the bank. That is the total financial information provided to date by the defendant. I am unable to prepare a budget for the maintenance of the Mary A. or insure that recurring operating expense obligations are being met without access to the full financial records.

# John C. Kurtz, Receiver
# Federal Trust Bank (Spur Ranch) vs. Mary A. II, et al
## Case No. 2010-CA-032241

I have learned through examination of the plaintiff's records that a trust account and agreement should exist with City National Bank of Florida. To date I have been unable to confirm the location of the account from the defendant's legal counsel or the Dean Mead law firm, which serves as Escrow Agent for the Mary A.

The purpose of the Trust Fund Agreement is to provide for the perpetual maintenance of the Mary A. in the event of default of the maintenance obligation required by the permit. The St. Johns River Water Management District is the beneficiary of the Trust. The documentation leads one to believe that the account should contain $1,042,217, plus accrued interest. A copy of the document is enclosed. I am continuing my efforts to locate and confirm the existence and balance of the account.

The Dean Mead law firm, Viera, Florida office, maintains an escrow account for Credit Reservation and Purchase Agreements (CRPA) for the Mary A. I was able to ascertain from Laura Minton Young, Esq. that they are holding funds totaling $186,568 as of June 30, 2011. I have included a copy of their escrow ledger which appears to reflect the deposit and sales history of the Mary A. credits from inception. I have created and enclosed a schedule reflecting the outstanding deposits and pending reservations as of June 30, 2011.

I have opened a Receivership account with Marine Bank and Trust, Vero Beach, Florida for the receipts and disbursements of the receivership. On July 1, I received a wire transfer from the escrow account at Dean Mead, in the amount of $63,535. This amount is net of the sales commission due to BKI, Inc. in the amount of $1,965, for a total escrow fund reduction of $65,500. The funds are the result of previously completed or forfeited deposits from the sale of mitigation credits.

### St. John's River Water Management District (SJRWMD)

The Mary A. is a wetlands mitigation bank located in Brevard County, Florida. The 2,000 acres +- are under the jurisdiction of the SJRWMD. I have included copies form the survey to orient you as to location and dimensions.

To create a mitigation bank, the permit approval process contains many provisions to which the owner must adhere to keep the permit in good standing. This requires proper management and maintenance of the site. The permit conditions give SJRWMD the right and the obligation to make periodic inspections of the site to verify that the proper management and maintenance practices are being performed to maintain the site in its proper condition.

**100 Vista Royale Blvd. Vero Beach, Florida 32962  772-559-8601  jckvista@aol.com**

# John C. Kurtz, Receiver
## Federal Trust Bank (Spur Ranch) vs. Mary A. II, et al
### Case No. 2010-CA-032241

SJRWMD conducted a compliance review as to permit No. 4-009-15931-6 in April, 2010.  They and issued a letter dated April 30, 2010, setting forth the areas that were not in compliance. Besides some reporting items, the major concern is the invasion of torpedo grass. This is a non-native species of grass that has to be managed. In this case, in some areas, the torpedo grass has taken over the entire tract.  Failure to meet the terms of the permit and a determination of material non-compliance would result in freezing the mitigation bank credits until the bank is brought back into compliance.

I have been in contact with Michelle Reiber, Technical Program Manager, and Jennifer Cope, Senior Regulatory Scientist, at SJRWMD. We discussed their enforcement issues and I informed them of my appointment as receiver. At this time, we are attempting to schedule a meeting with all of the appropriate parties on or about August 24, 2011 to review maintenance and construction issues.

I completed a site visit with William "Bill" Kerr, BKI, Inc. Consulting Ecologists, and Wayne Yates, caretaker, to review the current conditions on June 21, 2011. We traveled the site noting the areas of torpedo grass and the areas where construction is still required to obtain compliance with permit 4-009-15931-10. The permit will reduce the capital cost for improvements and provide reduced operating expenses by eliminating the need for a pump station. The construction permit is in threat of denial because of lack of activity since March 4, 2009.

I have included copies of the non-compliance letters and the latest follow-up correspondence related to the permits from the SJRWMD website.

### Contractors

The following contractors have been determined to be involved with the management and operation of the mitigation bank:

William W. Kerr, President
BKI, Inc. Consulting Ecologists

Wayne Yates, an individual
Caretaker

Dean Mead, Attorneys
Blake Mason, Esq.
Attorney-in-fact
Laura Minton Young, Esq.
Escrow Agent for Credit Sales

**100 Vista Royale Blvd.  Vero Beach, Florida 32962  772-559-8601  jckvista@aol.com**

# John C. Kurtz, Receiver
# Federal Trust Bank (Spur Ranch) vs. Mary A. II, et al
## Case No. 2010-CA-032241

### Mitigation Bank Credit Sales

I have learned that in the past that Bill Kerr has been the primary sales force and local contact for the sale of credits. When a buyer was prepared to enter into a reservation agreement, the down-payment was deposited into the Dean Mead Trust Account and held in escrow subject to the terms of the agreement. Mason Blake, a member of the firm, executed the agreement as "attorney-in-fact" for the Mary A. II, LLC.

On June 21, 2011, I was able to speak with Laura Minton Young, Esq., a member of the Dean Mead firm. She was the contact name provided me by the Plaintiff. I advised her of the receivership and provided her with a copy of the Order Appointing Receiver via email. Paragraph 2 (h) specifically deals with the sale of mitigation credits.

On June 28, 2011, without any contact from the firm, Mason Blake, signed a CRPA with Omni Waste of Osceola County, LLC, for 28 District credits and 3.1 Army Core of Engineers (ACOE) credits for a total of $1,119,500 and accepted a down-payment in the amount of $111,950. Additionally, the recent historical price for a District credit with the Mary A. has been $40,000 per credit. This agreement was signed at a price of $35,000 per credit.

Having said that, I don't necessarily disagree with the pricing based upon the economic conditions and a larger volume purchase, but strongly disagree with signing the agreement after their firm had been put on notice that there is a Receivership and it is not "business as usual". Additionally, signing as attorney-in-fact tells me that Mason Blake is not independent of the Defendant and raises further concerns for the receivership.

I also want to inform all parties that I understand from Bill Kerr that there is another CRPA in process with the Brevard County Board of County Commissioners for 116 Combined Credits. That means that it is a combination of SJRMD and ACOE credits. Recent historical pricing has been at $45,000 per combined credit. This proposed sale is at $40,000 per credit. Additionally, rather than a 10% deposit, that is partially refundable within the first 150 days, this agreement is supposed to contain the provision for a 15% deposit that is earned upon receipt. Not subject to refund. My understanding is that this agreement is to come before the Brevard County Board of County Commissioners in late July, 2011, for confirmation of the number of credits needed and the acceptance of the the CRPA.

# John C. Kurtz, Receiver
# Federal Trust Bank (Spur Ranch) vs. Mary A. II, et al
# Case No. 2010-CA-032241

Again, I feel this makes business sense and is compatible with the current economic conditions. My purpose in exposing this CRPA now is to seek court approval in advance and allow both parties to provide comments. The schedule enclosed provides the details on this report section.

### Receiver's Fees

Attached is my detailed invoice for the partial month of June, 2011. These fees will be paid in July and will be reflected the financial statements for that period.

### Action Requested

1. Production of relevant accounting records immediately by the Defendant.
2. With the creation of the receivership, I don't see the need for Dean Mead to serve as escrow agent. They have already displayed a disregard to the Order and I believe a lack of independence. I believe the receivership can, and should, assume the role of escrow agent for these funds.
3. Affirmation of the CRPA with Omni Waste.
4. Affirmation of the CRPA contemplated with Brevard County.
5. The sale of credits is the "life blood" of the Mary A. I request that the current historical per credit prices of:
    a. $40,000 per SRJWMD
    b. $45,000 per ACOE

   be approved by the Court so that we are able to actively seek and discuss terms with potential buyers with these price parameters in place. Acknowledging, that some volume discounts may be appropriate on larger sale and prior approval will be sought in advance by the receiver.

Respectfully submitted this 3rd day of July, 2011.

John C. Kurtz, CPA
Court Appointed Receiver

cc: Service list/with enclosures

100 Vista Royale Blvd.  Vero Beach, Florida 32962  772-559-8601  jckvista@aol.com

# <u>Service List</u>

Lewis W. Murphy, Jr. Esq.
Casey Walker, Esq.
2001 U.S. Highway 1
Vero Beach, FL 32960

James M. DuRant, Jr. Esq.
1407 Piedmont Drive East
Tallahassee, FL 32308

Jeffrey R. Jontz, Esq.
Post Office Box 1961
Winter Park, Fl 32790

Michael R. Riemenschneider, Esq.
1686 W. Hibiscus Boulevard
Melbourne, FL 32901

Harry N. Handley
437 Selkirk Drive
Winter Park, FL 32792

# In The Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida

**Federal Trust Bank,**
**substituted by Spur Ranch**
**Enterprises, LLC,**

        **Plaintiff,**

**Vs.**

**The Mary A. II, LLC, a Florida limited**
**liability company, James M. Rudnick;**
**TV 56, LTD, a dissolved Florida corporation;**
**Paxson Communications of Orlando – 56, Inc.,**
**n/k/a Ion Media of Orlando, Inc. and**
**Centerlane Holdings, LLC,**

        **Defendants.**

**Case No:**    **2010-CA-032241**

**Judge:**    **Hon. George B. Turner**

## Oath of Receiver

**State of Florida** )
              )
**County of Indian River** )

    **BEFORE ME,** the undersigned authority, personally appeared John C. Kurtz (hereinafter referred to as "Affiant"), who was sworn and says that he has been appointed Receiver in this action, pursuant to the Order Appointing Receiver dated June 7, 2011, and that he will faithfully perform his duties as Receiver.

    Under penalties of perjury, I declare that I have read the foregoing oath and the facts stated in it are true.

                    **"Receiver"**

                    John C. Kurtz

    **SWORN TO,** affirmed, and signed before me this 30th day of June, 2011, by **John C. Kurtz,** as Receiver, who is personally known to me.



(Affix Seal)

MERYL R. LEVINE
Comm# DD0722728
Expires 10/7/2011
Florida Notary Assn., Inc

Meryl R. Levine
Print name: Meryl R. Levine
**NOTARY PUBLIC,** State of Florida

## **Accounts**

# John C. Kurtz, Receiver
# Federal Trust Bank (Spur Ranch) vs. Mary A. II, et al
# Case No. 2010-CA-032241

July 1, 2011

Federal Trust Bank
312 W. 1st Street
Sanford, FL 32771

      Re: Any and all accounts in the name of
         Mary A. II, LLC.

Dear Sir/Madam:

    I am the Court Appointed Receiver in the above captioned matter.

    I have enclosed a copy of the Order Appointing Receiver for your files. Please note Paragraph 2. (j) for the authority to take control of any and all applicable accounts in your institution.  I been made aware of account 0191125217 (May, 2011 statement enclosed).  If you have any other accounts, it is incumbent upon you to disclose them to the Court.

    I spoke via phone with one of your representatives who provided me with your mailing address. I have also provided a copy of my Florida drivers license as she requested. If you need further verification, please contact me via phone on the letterhead address.

    I am enclosing wiring instructions for transfer of the balance(s) to my Receivership account. Thank you for your cooperation in this matter.

                Sincerely,

                John C. Kurtz, CPA
                Receiver

JCK

Enclosures

**100 Vista Royale Blvd.  Vero Beach, Florida 32962  772-559-8601  jckvista@aol.com**



## FEDERAL TRUST BANK

*Determined to do more.*

01 C

001193

MARY A II LLC
CREDIT SALES PROCEEDS
JAMES RUDNICK
PO BOX 13633
TALLAHASSEE FL  32317-3633

| | SUMMARY OF YOUR ACTIVITY | | |
|---|---|---|---|
| | STATEMENT DATE | | MAY 31 11 |
| | STATEMENT NUMBER | | 0191125217 |
| | BEGINNING BALANCE | | 583.87 |
| | DEPOSIT AMOUNT | + | 8000.00 |
| | WITHDRAWAL AMOUNT | - | 7667.19 |
| | SERVICE CHARGE | - | 7.00 |
| DEBITS | 5 | INTEREST PAID | + | .05 |
| | ENDING BALANCE | = | 909.73 |

**ZASH PAY A PERSONAL PAYMENT SERVICE
TO SEND AND RECEIVE MONEY SECURELY!
WITH JUST AN E-MAIL ADDRESS OR
CELL PHONE #.  ASK US AOBUT IT!**

**ADVANTAGE PLUS**          01-91125217                        **BALANCE SUMMARY**

| ACTIVITY BEGINNING | | APR 30 11 | WITHDRAWALS | DEPOSITS | $ | 583.87 |
|---|---|---|---|---|---|---|
| MAY 10 | DEPOSIT  SANFORD | | | 8000.00 | $ | 583.87 |
| MAY 12 | CHECK NUMBER | 1775 REF #913702629 | 720.00 | | $ | 7863.87 |
| MAY 13 | CHECK NUMBER | 1777 REF #913799645 | 589.19 | | $ | 7274.68 |
| MAY 13 | CHECK NUMBER | 1774 REF #913799644 | 1008.00 | | $ | 6266.68 |
| MAY 13 | CHECK NUMBER | 1776 REF #913799599 | 1350.00 | | $ | 4916.68 |
| MAY 13 | CHECK NUMBER | 1778 REF #913799646 | 4000.00 | | $ | 916.68 |
| MAY 31 | INTEREST PAID 4/30 THROUGH 5/31 | | | .05 | $ | 916.73 |
| MAY 31 | ACCOUNT CHARGE FEE | | 7.00 | | $ | 909.73 |

### CHECKS PAID ON YOUR ACCOUNT

| CHECK | DATE | AMOUNT | CHECK | DATE | AMOUNT | CHECK | DATE | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 1774 | 05/13 | 1008.00 | 1776 | 05/13 | 1350.00 | 1778 | 05/13 | 4000.00 |
| 1775 | 05/12 | 720.00 | 1777 | 05/13 | 589.19 | | | |

.04% ANNUAL PERCENTAGE YIELD EARNED IS BASED ON $      .05 INTEREST EARNED FOR  32 DAYS

INTEREST RATE AS OF:
APR 30   00.00       MAY 10   00.11
MAY 13   00.00



## STATE OF FLORIDA

## MITIGATION BANK TRUST FUND AGREEMENT
## TO DEMONSTRATE PERPETUAL MANAGEMENT FINANCIAL ASSURANCE

THIS TRUST AGREEMENT, the "Agreement," is entered into as of _____9/30/08_____ by and
                                                                                  Date

between ____Mary A II, LLC____
                                   Name of Mitigation Banker

a ____Florida Limited Liability Company_____ (the Grantor,)
             Name of State            Insert "corporation, partnership, association, or proprietorship",

and ____City National Bank of Florida_____
                             Name and Address of Corporate Trustee

____National Banking Corp_____ (the Trustee.)
                    Insert "incorporated in the State of ____" or "a national bank"

WHEREAS, Grantor is the owner of certain real property in Brevard County, Florida, and has
received from the St. Johns River Water Management District ("District") that certain permit number 4-
( 009-15931-6       ) which authorizes the construction and implementation of the ___Mary A II___
Mitigation Bank;

WHEREAS, the District, a Florida public entity created under Chapter 373, Florida Statutes, has
established certain regulations applicable to the Grantor, requiring that a mitigation bank permittee shall
provide assurance that funds will be available when needed for corrective action if Grantor fails to
perpetually manage that mitigation bank pursuant to the requirements of the mitigation bank permit,

WHEREAS, the Grantor has elected to establish this trust fund agreement to provide such financial
assurance for the Mary A II Mitigation Bank identified herein,

WHEREAS, the Grantor, acting through its duly authorized officers, has selected the Trustee to be the
trustee under this Agreement, and the Trustee is willing to act as trustee,

NOW, THEREFORE, the Grantor and the Trustee, for good and valuable consideration, the receipt
and sufficiency of which is hereby acknowledged, agree as follows:

Section 1. Definitions. As used in this Agreement:

(a)     The term "Grantor" means the ___Mary A II, LLC___ who enters into this Agreement
                                              Mitigation Banker's Name
    and any successors or assigns of the Grantor.

(b)     The term "Trustee" means City Natibhal the Trustee who enters into this Agreement and
                                       Trustee's Name
    any successor Trustee.

(c)     The term "District" means the St. Johns River Water Management District a public entity in
    the State of Florida or any successor thereof.

Section 2. Identification of Cost Estimates. This Agreement pertains to the cost estimate for perpetual management of the Mary A II Mitigation Bank identified in Attachment A hereto.

Section 3. Establishment of Fund. The Grantor and the Trustee hereby establish a trust fund (the Fund), for the benefit of the District. The Grantor and the Trustee intend that no third party have access to the Fund except as herein provided. The Fund is established by the Grantor's deposit of $ 1,042,517 into the Fund. Such monies and other monies subsequently placed in the Fund are referred to as the Fund, together with all earnings and profits thereon, less any payments or distributions made by the Trustee pursuant to this Agreement The Fund shall be held by the Trustee, IN TRUST, for the benefit of the District as hereinafter provided. The Trustee shall not be responsible nor shall it undertake any responsibility for the amount or adequacy of, nor any duty to collect from the Grantor, any payments necessary to discharge any liabilities of the Grantor established by the District.

Section 4. Payment for Undertaking Perpetual Management Activities. The Trustee shall make payments from the Fund as the Grantor or the Director of the District's Department of Resource Management shall direct in writing to provide for the payment of the costs of undertaking activities to provide for the perpetual management of the mitigation bank covered by this Agreement pursuant to the requirements of the mitigation bank permit. The Trustee shall reimburse persons specified by the Grantor or the District from the Fund for perpetual management expenditures in such amounts as the Grantor or the District shall direct in writing. In the event of conflicting instructions from the Grantor and the District, the District's instructions shall prevail. The Trustee shall not make any payments from the principal of the Fund pursuant to the Grantor's direction without the District's written consent. The Trustee shall cease honoring Grantor's instructions if so directed by the District in writing. In addition, the Trustee shall refund to the Grantor such amounts as the District specifies in writing. Upon refund, such funds shall no longer constitute part of the Fund as defined herein.

The Fund may not be drawn upon to cover any of the following:

(a)   Any obligation of Grantor under a workers' compensation, disability benefits, or unemployment compensation law or other similar law:

(b)   Bodily injury to an employee of Grantor arising from, and in the course of employment by Grantor:

(c)   Bodily injury or non-realty property damage arising from the ownership, maintenance, use, or entrustment to others of any aircraft, motor vehicle, or watercraft:

(d)   Property damage to any property owned, rented, loaned to, in the care, custody, or control of, or occupied by Grantor that is not the direct result of the construction and implementation of the mitigation bank;

(e)   Bodily injury or property damage for which Grantor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

Section 5. Additional Payments Into the Fund. After the initial deposit of principal into the Fund, the Grantor shall increase the principal if so required by the District pursuant to its administrative regulations and the requirements of the mitigation bank permit.

Section 6. Trustee Management. The Trustee shall invest and reinvest the principal and income of the Fund in one or more investments and keep the Fund invested as a single fund, without distinction between principal and income, in accordance with general investment policies and guidelines which the Grantor may communicate in writing to the Trustee from time to time, subject, however, to the provisions of this section. In investing, reinvesting, exchanging, selling, and managing the Fund, the Trustee shall discharge its duties with respect to the trust fund solely in the interest of the beneficiary and with the care, skill, prudence, and diligence under the circumstances then prevailing which persons of prudence, acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims; except that:

(a)  Securities or other obligations of the Grantor, or any other owner or operator of the mitigation bank, or any of their affiliates as defined in the Investment Company Act of 1940, as amended, 15 U.S.C. 80a-2.(a), shall not be acquired or held, unless they are securities or other obligations of the Federal or a state government;

(b)  The Trustee is authorized to invest the Fund in time or demand deposits of the Trustee, to the extent insured by an agency of the Federal or a state government; and

(c)  The Trustee is authorized to hold cash awaiting investment or distribution uninvested for a reasonable time and without liability for the payment of interest thereon.

Section 7.  Commingling and Investment. The Trustee is expressly authorized in its discretion:

(a)  To transfer from time to time any or all of the assets of the Fund to any common, commingled, or collective trust fund created by the Trustee in which the Fund is eligible to participate, subject to all of the provisions thereof, to be commingled with the assets of other trusts participating therein; and

(b)  To purchase shares in any investment company registered under the Investment Company Act of 1940, 15 U.S.C. 80a-1 et seq., including one which may be created, managed, underwritten, or to which investment advice is rendered or the shares of which are sold by the Trustee. The Trustee may vote such shares in its discretion.

Section 8. Express Power of Trustee. Without in any way limiting the powers and discretion conferred upon the Trustee by the other provisions of this Agreement or by law, the Trustee is expressly authorized and empowered:

(a)  To sell, exchange, convey, transfer, or otherwise dispose of any property held by it, by public or private sale. No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity or expediency of any such sale or other disposition;

(b)  To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(c)     To register any securities held in the Fund in its own name or in the name of a nominee and to hold any security in bearer form or in book entry, or to combine certificates representing such securities with certificates of the same issue held by the Trustee in other fiduciary capacities, or to deposit or arrange for the deposit of such securities in a qualified central depository even though, when so deposited, such securities may be merged and held in bulk in the name of the nominee of such depository with other securities deposited therein by another person, or to deposit or arrange for the deposit of any securities issued by the United States Government, or any agency or instrumentality thereof, with a Federal Reserve bank, but the books and records of the Trustee shall at all times show that all such securities are part of the Fund;

(d)     To deposit any cash in the Fund in interest-bearing accounts maintained or savings certificates issued by the Trustee, in its separate corporate capacity, or in any other banking institution affiliated with the Trustee, to the extent insured by an agency of the Federal or a State government; and

(e)     To compromise or otherwise adjust all claims in favor of or against the Fund.

Section 9. Taxes and Expenses. All taxes of any kind that may be assessed or levied against or in respect of the Fund and all brokerage commissions incurred by the Fund shall be paid from the Fund. All other expenses incurred by the Trustee in connection with the administration of this Trust, including fees for legal services rendered to the Trustee, the compensation of the Trustee to the extent not paid directly by the Grantor, and all other proper charges and disbursements of the Trustee shall be paid from the Fund.

Section 10. Annual Valuation. The Trust shall annually, at least 30 days prior to the anniversary date of establishment of the Fund, furnish to the Grantor and to the District a statement confirming the value of the Trust. Any securities in the Fund shall be valued at market value as of no more than 60 days prior to the anniversary date of establishment of the fund. The failure of the Grantor or the District to object in writing to the Trustee within 90 days after the statement has been furnished to the Grantor and the District shall constitute a conclusively binding assent by the Grantor, barring the Grantor from asserting any claim or liability against the Trustee with respect to matters disclosed in the statement.

Section 11. Advice of Counsel. The Trustee may from time to time consult with counsel, who may be counsel to the Grantor, with respect to any question arising as to the construction of this Agreement or any action to be taken hereunder. The Trustee shall be fully protected, to the extent permitted by law, in acting upon the advice of counsel.

Section 12. Trustee Compensation. Grantor shall pay the Trustee any necessary fees for services rendered. Where the Grantor is no longer in existence, the Trustee is authorized to charge against the Trust its published Trust fee schedule in effect at the time services are rendered. However, all Trustee compensation charged against the Trust shall be paid from trust income unless the District authorizes payment from the trust principal in writing.

Section 13. Successor Trustee. The Trustee may resign or the Grantor may replace the Trustee, but such resignation or replacement shall not be effective until the Grantor has appointed a successor Trustee, the successor is approved by the District, and this successor accepts the appointment. The successor trustee shall have the same powers and duties as those conferred upon the Trustee hereunder. Upon the

Form No  40C-4.900(9) effective 1/7/99                          4

successor trustee's acceptance of the appointment, the Trustee shall assign, transfer, and pay over to the successor trustee the funds and properties then constituting the Fund. If for any reason the Grantor cannot or does not act in the event of the resignation of the Trustee, the Trustee may apply to a court of competent jurisdiction for the appointment of a successor trustee or for instructions. The successor trustee shall specify the date on which it assumes administration of the trust in a writing sent to the Grantor, the District, and the present Trustee by certified mail 10 days before such change becomes effective. Any expenses incurred by the Trustee as a result of any of the acts contemplated by this Section shall be paid as provided in Section 12.

Section 14. Instructions to the Trustee. All orders, requests, and instructions by the Grantor to the Trustee shall be in writing, signed by James Rliidnink or such other designees as the Grantor may designate by amendment to this Agreement. The Trustee shall be fully protected in acting without inquiry in accordance with the Grantor's orders, requests, and instructions. All orders, requests, and instructions by the District to the Trustee shall be in writing, signed by the District's Director of the Department of Resource Management, or the Director's designee, and the Trustee shall act and shall be fully protected in acting in accordance with such orders, requests, and instructions. The Trustee shall have the right to assume, in the absence of written notice to the contrary, that no event constituting a change or a termination of the authority of any person to act on behalf of the Grantor or the District hereunder has occurred. The Trustee shall have no duty to act in the absence of such orders, requests, and instructions from the Grantor and/or the District, except as provided for herein.

Section 15. Amendment of Agreement. This Agreement may be amended by an instrument in writing executed by the Grantor, the Trustee, and the District, or by the Trustee and the District if the Grantor dies, is legally incapacitated, is administratively or judicially dissolved, or othrwise ceases to exist.

Section 16. Irrevocability and Termination. Subject to the right of the parties to amend this Agreement as provided in Section 15, this Trust shall be irrevocable and shall continue until terminated at the written agreement of the Grantor, the Trustee, and the District, or by the Trustee and the District, if the Grantor dies, is legally incapacitated, is administratively or judicially dissolved, or othrwise ceases to exist. Upon termination of the Trust, all remaining trust property, less final trust administration expenses, shall be delivered pursuant to the written agreement terminating the trust, or where the Grantor has ceased to exist, then to the District.

Section 17. Immunity and Indemnification. The Trustee shall not incur personal liability of any nature in connection with any act or omission, made in good faith, in the administration of this Trust, or in carrying out any directions by the Grantor or the District issued in accordance with this Agreement. The Trustee shall be indemnified and saved harmless by the Grantor or from the Trust Fund, or both, from and against any personal liability to which the Trustee may be subjected by reason of any act or conduct in its official capacity, including all expenses reasonably incurred in its defense in the event the Grantor fails to provide such defense.

Section 18. Choice of Law. This Agreement shall be administered, construed, and enforced according to the laws of the State of Florida.

Section 19. Interpretation. As used in this Agreement, words in the singular include the plural and words in the plural include the singular. The descriptive headings for each section of this Agreement shall not affect the interpretation or the legal efficacy of this Agreement.

Form No 40C-4.900(9) effective 1/7/99                    5

IN WITNESS WHEREOF the parties have caused this Agreement to be executed by their respective officers duly authorized and their corporate seals to be hereunto affixed and attested as of the date first above written.

Signature of Grantor

MANAGING MEMBER
Title

Attest:

Title

Seal

Signature of Trustee

Title EVP, GENERAL COUNSEL

Attest:

Title

Seal

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me this __2__ day of __OCTOBER, 2008__ by WILLIAM E. SCHECK the __EVP__ of __CITY NATIONAL BANK__, a Florida corporation, on behalf of the corporation. Such person did not take an oath and: OF FLORIDA NATIONAL BANKING CORPORATION

___✓___  is/are personally known to me
_____  produced a current Florida driver's license as identification
_____  produced _____ as identification

Signature of Notary

(Notary Seal)

GLORIA PELÁEZ-CABOULI
Name of Notary (typed, printed or stamped)
Commission number (if not legible on seal) _____
My commission expires: (if not legible on seal) _____

GLORIA PELAEZ-CABOULI
Notary Public · State of Florida
My Commission Expires Dec 14, 2012
Commission # DD 612963
Bonded Through National Notary Assn.

STATE OF FLORIDA
COUNTY OF _LEON_

The foregoing instrument was acknowledged before me this _30th_ day of _September_, _2008_, by _James M. Budnick_, the _Managing Member_ of _Mary A II_____ Bank, on behalf of the corporation. Such person did not take an oath and :

    _✓_          is/are personally known to me
   _____       produced a current Florida driver's license as identification
   _____       produced _____ as identification

                  _Cynthia W. Hamilton_
                  Signature of Notary

(Notary Seal)

                  _Cynthia W. Hamilton_
                  Name of Notary (typed, printed or stamped)
                  Commission number (if not legible on seal) _DD56913 9_
                  My commission expires: (if not legible on seal) _August 6, 2010_



Cynthia W. Hamilton
Commission # DD569139
Expires August 6, 2010
Bonded Troy Fain - Insurance, Inc 800-385-7019

# ATTACHMENT A

Maintenance:

- Levees
  Mow                                      $5,433
  Erosion Repair                           $2,100

- Drainage Structures                      $1,000

- Access Control                           $1,000

- Prescribed Burns                         $1,000

Monitoring:

- Exotics/Invasive                        $30,000
  Species Control

Administrative:

- Consulting Fees                         $10,000

- Land Manager' Salary                    $12,000

Annual Management                         $62,533
  Cost Total

Trust Fund Amount            $1,042,217
  (Assuming an average rate of return of six percent per annum pursuant to rule
12.3.8(i)2, A.H.)

# Federal Trust Bank (Spur Ranch) v. Mary A. II, LLC et al
## Schedule of Credit Reservation Agreements
### 6/30/2011

| Date of Agreement | Expiration | Name/Purchaser | No. of Credits District | ACOE | Purchase Price | Deposit | |
|---|---|---|---|---|---|---|---|
| | | **Existing Agreements** | | | | | |
| 6/20/2008 | 12/31/2011 | Cameron General Contractors, Inc. | 10.7 | | 428,000 | 85,600 | |
| 7/6/2009 | 1/6/2010 | Montreal, Ltd. | 1.9 | | 76,000 | 35,468 | |
| | | **Grand Total** | | | | 121,068 | |
| | | **Pending Agreements** | | | | | |
| | | Omni Waste of Osceola County | 28 | 3.1 | 1,119,500 | 111,950 | Received |
| | | Brevard County Board of County Commissioners | | 116 | 4,640,000 | 696,000 | Proposed |

| Established Price Per Credit | Prices |
|---|---|
| SJRWMD credit | $40,000 |
| Combined credit District and ACOE | 45,000 |

**Standard Terms**
10% down payment at signing
180 day reservation
50% of deposit earned at signing
Refund prorated per schedule up to 150 days
Fully forfeited at 180 days
Automatic extension for 180 days with additional 10%

## Mary A II, LLC Trust Account

| BUYER | DISTRICT CREDITS | ACOE CREDITS | DISTRICT PER CREDIT AMOUNT | COMBINED PER CREDIT AMOUNT | DISB. DATE | MARY A DISBURSED AMOUNT | ADDL. DISB. TO MARY A. | FEDERAL TRUST BANK | BILL KERR DISBURSED AMOUNT | Forfiet | BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Evans Group, LLC | 7.00 | | $ 20,000.00 | | 12/15/2004 | $ 135,800.00 | | | $ 4,200.00 | | $ - |
| Bella Bista Condo | 6.00 | | $ 20,000.00 | | 12/9/2004 | $ 116,400.00 | | | $ 3,600.00 | | $ - |
| Lennar Homes, Inc. | 1.70 | | $ 20,000.00 | | 12/14/2004 | $ 32,980.00 | | | $ 1,020.00 | | $ - |
| Lakes of Brookhave, LLC | 2.00 | | $ 20,000.00 | | 5/24/2005 | $ 38,800.00 | | | $ 1,200.00 | | $ - |
| Hammock Trace Preserve Development Company | 4.00 | | $ 25,000.00 | | 5/11/2005 | $ 97,000.00 | | | $ 3,000.00 | | $ - |
| Prime Home Builders | 3.00 | | $ 20,000.00 | | 2/18/2005 | $ 58,200.00 | | | $ 1,800.00 | | $ - |
| Sunrise Vero Beach | 3.00 | | $ 20,000.00 | | 12/20/2004 | $ 58,200.00 | | | $ 1,800.00 | | $ - |
| Centex/Lennar at Woodfield, LLC | 3.00 | | $ 20,000.00 | | 2/18/2005 | $ 58,200.00 | | | $ 1,800.00 | | $ - |
| Moore, Alvin and Susan | 0.00 | | $ 20,000.00 | | 7/5/2006 | $ 582.00 | | | $ 18.00 | 0.30 | $ - |
| Circle Z Ranch of Fellsmere, LLC | 0.50 | | $ 25,000.00 | | 5/2/2005 | $ 12,125.00 | | | $ 375.00 | | $ - |
| Stephen & Cindy Calhoun | 0.10 | | $ 25,000.00 | | 1/28/2005 | $ 2,425.00 | | | $ 75.00 | | $ - |
| Town Center Partners, LTD | 2.30 | | $ 25,000.00 | | 8/19/2005 | $ 55,775.00 | | | $ 1,725.00 | | $ - |
| Lake Poinsett Shores, Inc./Moore Partnership, LLC | 2.80 | | $ 25,000.00 | | 5/11/2005 | $ 67,900.00 | | | $ 2,100.00 | | $ - |
| TFM Enterprises, Inc. | 1.50 | | $ 25,000.00 | | 7/15/2005 | $ 36,375.00 | | | $ 1,125.00 | | $ - |
| M2 Development, LLC | 3.60 | | $ 25,000.00 | | 5/24/2005 | $ 87,300.00 | | | $ 2,700.00 | | $ - |
| City of Palm Bay | 3.67 | | $ 25,000.00 | | 7/8/2005 | $ 88,997.50 | | | $ 2,752.50 | | $ - |
| RDR Communities, Inc. | 13.00 | | $ 25,000.00 | | 9/29/2005 | $ 315,250.00 | | | $ 9,750.00 | | $ - |
| Goode, Richard | 0.10 | | $ 25,000.00 | | 5/11/2005 | $ 2,425.00 | | | $ 75.00 | | $ - |
| Pineda Crossing Corp. | 0.50 | | $ 25,000.00 | | 5/2/2005 | $ 12,125.00 | | | $ 375.00 | | $ - |
| Gulf Stream Partners, Inc | 1.00 | | $ 25,000.00 | | 6/28/2006 | $ 24,250.00 | | | $ 750.00 | | $ - |
| Rolling Meadow Ranch, Inc. | 3.20 | | $ 25,000.00 | | 6/30/2006 | $ 77,600.00 | | | $ 2,400.00 | | $ - |
| Bisset, Robert K. | 0.10 | | $ 25,000.00 | | 7/8/2005 | $ 2,425.00 | | | $ 75.00 | | $ - |
| Minton Cove Community Developers, Inc. | 4.90 | | $ 25,000.00 | | 1/23/2006 | $ 118,825.00 | | | $ 3,675.00 | | $ - |
| Mercedes Homes, Inc. | 0.70 | | $ 25,000.00 | | 4/20/2006 | $ 16,975.00 | | | $ 525.00 | | $ - |
| Colon, Mr. and Mrs. Charles | 0.20 | | $ 25,000.00 | | 9/1/2005 | $ 4,850.00 | | | $ 150.00 | | $ - |
| DR Horton, Inc.-Jacksonville | 4.70 | | $ 25,000.00 | | 3/7/2006 | $ 113,975.00 | | | $ 3,525.00 | | $ - |
| DiVosta Homes, L.P. | 7.90 | | $ 25,000.00 | | 2/9/2006 | $ 191,575.00 | | | $ 5,925.00 | | $ - |
| 3-GEN-X-ONE, INC. | 1.00 | | $ 25,000.00 | | 4/5/2006 | $ 24,250.00 | | | $ 750.00 | | $ - |
| Moranda Homes Inc. | 0.30 | | $ 25,000.00 | | 9/30/2006 | $ 7,275.00 | | | $ 225.00 | | $ - |
| Citrus Trace Holdings, LLC | 0.20 | | $ 25,000.00 | | 1/9/2006 | $ 4,850.00 | | | $ 150.00 | | $ - |
| Kathryn Alemaghides | 0.20 | | $ 25,000.00 | | 2/7/2006 | $ 4,850.00 | | | $ 150.00 | | $ - |
| Maronda Homes Inc. | 0.20 | | $ 25,000.00 | | 12/22/2005 | $ 4,850.00 | | | $ 150.00 | | $ - |
| Maronda Homes Inc. | 0.50 | | $ 25,000.00 | | 12/20/2005 | $ 12,125.00 | | | $ 375.00 | | $ - |
| Richard and Patricia Haggerman | 0.20 | | $ 25,000.00 | | 12/5/2005 | $ 4,850.00 | | | $ 150.00 | | $ - |
| Palmwood Phase II | 0.00 | | | | 7/25/2007 | $ 12,367.50 | | | $ 382.50 | 5.10 | $ - |
| KB Treasure Coast, LLC | 6.00 | | $ 25,000.00 | | 5/25/2006 | $ 145,500.00 | | | $ 4,500.00 | | $ - |
| KB Treasure Coast, LLC | 0.80 | | $ 30,000.00 | | 9/6/2006 | $ 23,280.00 | | | $ 720.00 | | $ - |
| Veranda Park Development Corporation | 3.00 | | $ 30,000.00 | | 6/28/2006 | $ 72,750.00 | | | $ 2,250.00 | | $ - |
| Veranda Park Development Corporation | 0.80 | | $ 30,000.00 | | 6/28/2006 | $ 23,280.00 | | | $ 720.00 | | $ - |
| Thomas G. Wenski, as Bishop of the Diocese of Orlando | 10.10 | | $ 25,000.00 | | 12/19/2006 | $ 244,925.00 | | | $ 7,575.00 | | $ - |
| *RJP Development Company | 9.10 | | $ 25,000.00 | | 1/4/2007 | $ 218,492.50 | $ 2,182.50 | | $ 6,825.00 | | $ - |

| BUYER | DISTRICT CREDITS | ACOE CREDITS | DISTRICT PER CREDIT AMOUNT | COMBINED PER CREDIT AMOUNT | DISB. DATE | MARY A DISBURSED AMOUNT | ADDL DISB. TO MARY A. | FEDERAL TRUST BANK | BILL KERR DISBURSED AMOUNT | Forfiet | BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Designation to Micco Burrow Pit Project | 0.90 | | | | 4/18/2006 | $ 21,825.00 | | | $ 675.00 | | $  - |
| **RDR Communities, Inc. | 0.00 | | $ 25,000.00 | | 1/4/2006 | | 25,000.00 | | | | $ 25,000.00 |
| **The Village | 14.50 | | $ 25,000.00 | | 1/4/2006 | $ 342,167.50 | 9,457.50 | | $ 10,875.00 | * | $ (75,750.00) |
| **RDR Communities, Inc. | 5.50 | | $ 25,000.00 | | 1/4/2006 | $ 133,375.00 | | | $ 4,125.00 | * | $  - |
| ***MVP | 0.00 | | $ 25,000.00 | | | | 50,750.00 | | | | $ 50,750.00 |
| ***R&D Investment Co | 1.90 | | $ 25,000.00 | | 2/21/2007 | $ 46,075.00 | | | $ 1,425.00 | | $  - |
| ***Town Center Partners, LTD | 7.80 | | $ 25,000.00 | | 12/5/2006 | $ 189,150.00 | | | $ 5,850.00 | | $  - |
| Town Center Partners, LTD | 0.10 | | $ 30,000.00 | | 12/5/2006 | $ 2,910.00 | | | $ 90.00 | | $  - |
| Town Center Partners, LTD | 5.00 | | $ 30,000.00 | | 12/5/2006 | $ 145,500.00 | | | $ 4,500.00 | | $  - |
| Maronda Homes Inc. | 0.50 | | $ 30,000.00 | | 3/23/2006 | $ 14,550.00 | | | $ 450.00 | | $  - |
| Maronda Homes Inc. | 0.10 | | $ 30,000.00 | | | $ 2,910.00 | | | $ 90.00 | | $  - |
| Lennar Homes, Inc. | 7.20 | | $ 30,000.00 | | 12/5/2006 | $ 209,520.00 | | | $ 6,480.00 | | $  - |
| Sawgrass Preserve (aka Minton Trails) | 0.20 | | | | 10/13/2006 | $ 5,820.00 | | | $ 180.00 | | |
| Garvey Development | 9.90 | | $ 30,000.00 | | 9/6/2006 | $ 288,090.00 | | | $ 8,910.00 | | |
| Christensen, Kevin & Joanne | 0.20 | | $ 30,000.00 | | 7/3/2006 | $ 5,820.00 | | | $ 180.00 | | |
| Sebastian Landings, LLC | 0.50 | | $ 25,000.00 | | 10/19/2006 | $ 12,125.00 | | | $ 375.00 | | |
| CBL & Associates/All 27.9 Credit assigned to Hammock Landing/West Melbourne, LLC | 5.00 | | $ 35,000.00 | | 1/9/2009 | $ 84,875.00 | | $ 84,875.00 | $ 5,250.00 | | $  - |
| CBL & Associates/All 27.9 Credit assigned to Hammock Landing/West Melbourne, LLC | 19.00 | | $ 32,500.00 | | 11/1/2007 | $ 299,487.50 | | $ 299,487.50 | $ 18,525.00 | | $  - |
| Rohm Investments, Inc. | 0.50 | | $ 30,000.00 | | 8/16/2006 | $ 14,550.00 | | | $ 450.00 | | |
| 3-Gen-X, Inc. | 3.30 | | $ 30,000.00 | | 11/1/2007 | $ 46,530.00 | | $ 49,500.00 | $ 2,970.00 | | |
| Brad and Tracy Lott | 2.50 | | $ 30,000.00 | | 9/28/2006 | $ 72,750.00 | | | $ 2,250.00 | | |
| Andrew R. Machata | 0.60 | | $ 30,000.00 | | 2/7/2006 | $ 17,460.00 | | | $ 540.00 | | |
| Melbourne Venture No. Two, LP | 1.90 | | $ 30,000.00 | | 12/5/2006 | $ 55,290.00 | | | $ 1,710.00 | | |
| Rolling Meadow Ranch, Inc. | 6.00 | | $ 30,000.00 | | 12/13/2007 | $ 84,600.00 | | $ 90,000.00 | $ 5,400.00 | | |
| Native Homes of Brevard | 0.10 | | $ 30,000.00 | | 12/20/2006 | $ 2,910.00 | | | $ 90.00 | | |
| The Haven at Riviera, LLC | 9.60 | | $ 30,000.00 | | 12/13/2007 | $ 135,360.00 | | $ 144,000.00 | $ 8,640.00 | | |
| Brian Lund | 1.50 | | $ 30,000.00 | | 7/9/2007 | $ 43,650.00 | | | $ 1,350.00 | | |
| Cal Builders | 0.10 | | $ 30,000.00 | | 1/12/2007 | $ 2,910.00 | | | $ 90.00 | | |
| Bryan Hosack and Anna Hosack | 0.10 | | $ 30,000.00 | | 1/12/2007 | $ 2,910.00 | | | $ 90.00 | | |
| Florida Power & Light Company | 0.10 | | $ 30,000.00 | | 1/24/2007 | $ 2,910.00 | | | $ 90.00 | | |
| Lakeside Palms, LLC | 2.30 | | $ 35,000.00 | | 3/28/2007 | $ 78,085.00 | | | $ 2,415.00 | | |
| Huntington II, LLC (FORFEIT) | 0.00 | | $ 30,000.00 | | 2/12/2007 | $ 17,850.00 | | | | 5.10 | $  - |
| Melbourne 95 New Haven, LLC | 4.20 | | $ 35,000.00 | | 10/17/2007 | $ 142,590.00 | | | $ 4,410.00 | | $  - |
| Brevard Community College | 0.40 | | $ 35,000.00 | | 4/16/2008 | $ 6,790.00 | | $ 6,790.00 | $ 420.00 | | $  - |
| School Board of Brevard County | 6.10 | | $ 35,000.00 | | 3/4/2008 | $ 103,547.50 | | $ 103,547.50 | $ 6,405.00 | | $  - |
| Paul D. Kingery, Trustee | 2.00 | | $ 35,000.00 | | 12/13/2007 | $ 33,950.00 | | $ 33,950.00 | $ 2,100.00 | | $  - |
| Melbourne Suncoast, LLP | 0.50 | | $ 35,000.00 | | 6/2/2008 | $ 8,487.50 | | $ 8,487.50 | $ 525.00 | | $  - |
| Brevard County Board of County Commissioners | 21.20 | | $ 35,000.00 | | 3/27/2008 | $ 359,870.00 | | $ 359,870.00 | $ 22,260.00 | | $  - |
| Florida Power & Light Company | 0.10 | | $ 35,000.00 | | 1/22/2008 | $ 1,697.50 | | $ 1,697.50 | $ 105.00 | | $  - |
| Indian River County Board of County Commissioners | 0.10 | | $ 35,000.00 | | 4/18/2008 | $ 1,697.50 | | $ 1,697.50 | $ 105.00 | | $  - |
| Tomoser, Robert V. and Jean E. | 0.40 | | $ 40,000.00 | | 3/6/2008 | $ 7,760.00 | | $ 7,760.00 | $ 480.00 | | $  - |

Mary A Trust Account ledger (M2024 12)

6/20/2011

| BUYER | DISTRICT CREDITS | ACOE CREDITS | DISTRICT PER CREDIT AMOUNT | COMBINED PER CREDIT AMOUNT | DISB. DATE | MARY A DISBURSED AMOUNT | ADDL. DISB. TO MARY A. | FEDERAL TRUST BANK | BILL KERR DISBURSED AMOUNT | Forfiet | BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Brevard County Board of County Commissioners | 1.60 | | $ 40,000.00 | | | $ 31,040.00 | | $ 31,040.00 | $ 1,920.00 | | $   - |
| Cameron General Contractors | 10.70 | | $ 40,000.00 | | 6/29/2009 | 41,516.00 | | 83,032.00 | 3,852.00 | | $ 85,600.00 |
| Brevard County Board of County Commissioners | 2.00 | | $ 40,000.00 | | 12/18/2009 | $ 38,800.00 | | 38,800.00 | 2,400.00 | | $   - |
| Brevard County Board of County Commissioners | 1.10 | | $ 40,000.00 | | | | | | | | $ 44,000.00 |
| Jasmin Blake c/o Stanley Homes, Inc. | 0.10 | | $ 40,000.00 | | 6/19/2009 | 1,940.00 | | $ 1,940.00 | 120.00 | | $   - |
| Brevard Co. Board of County Commissioners | 2.40 | | $ 40,000.00 | | 10/15/2009 | 46,560.00 | | $ 46,560.00 | 2,880.00 | | $   - |
| Montreal, Ltd. | 1.90 | | $ 40,000.00 | | | | | | | | $ 35,468.00 |
| Fla. Gas Transmission Company, LLC | | 0.10 | $ 40,000.00 | $ 45,000.00 | 9/7/2010 | | | $ 3,880.00 | $ 120.00 | | $   - |
| Huntington II, LLC | 0.20 | | $ 40,000.00 | $ 45,000.00 | | | | | | | $   - |
| Haridat, Dhanessar | 0.10 | | $ 40,000.00 | $ 45,000.00 | 7/27/2010 | $   - | | 3,880.00 | 120.00 | | $   - |
| CSC Properties | 0.20 | | $ 40,000.00 | $ 45,000.00 | | $   - | | $ 7,760.00 | 240.00 | | $   - |
| Bob Steele Chevrolet, Inc. | 0.80 | 0.50 | $ 40,000.00 | $ 45,000.00 | | | | 33,465.00 | 1,035.00 | | $   - |
| DQSM, LLC (LaGrange Cell Site) | 0.30 | 0.20 | $ 40,000.00 | $ 45,000.00 | | | | | | | $ 13,500.00 |
| | | | | | | | | | | | $   - |
| Sunset River Properties, LLC | 0.20 | | $ 40,000.00 | | | | | | | | $ 8,000.00 |
| | | | | | | | | | | | $   - |
| | | | | | | | | | | | $   - |
| | | | | | | | | | | | $   - |
| | | | | | | | | | | | $   - |
| | | | | | | | | | | | $   - |
| | | | | | | $ 5,839,190.50 | 87,390.00 | 1,442,019.50 | $ 225,000.00 | | $ 186,568.00 |
| | | | | | | | | | | | $ 190,068.00 |

Previously Issued            39.40
Issued District Credits:     315.77
Issued ACOE Credits:         0.80

302.90
404.39

Balance            390.72

*CBL dropped 3.9 credits
*Huntington II, LLC - Funds are Credited & Reservation Letter sent out 3/18/10

## St Johns River Water Management District
## "SJRWMD"

# MARY "A" RANCH
# MITIGATION BANK PROJECT
## O. L. C., INCORPORATED

## CONSTRUCTION PLANS

### SHEET INDEX

COVER SHEET AND INDEX ........................................ 1
OVERALL SURVEY ................................................. 2
WEST AND NORTH PROPERTY LINE CROSS SECTIONS........ 3
SOUTH PROPERTY LINE CROSS SECTIONS .................... 4
EAST PROPERTY LINE CROSS SECTIONS ....................... 5
NORTH AND EAST RESERVOIR DIKE CROSS SECTIONS ...... 6
OVERALL PROPOSED IMPROVEMENT PLAN DRAWING........ 7
PROPOSED OVERFLOW STRUCTURES A, B & C DETAILS...... 8
PROPOSED OVERFLOW STRUCTURES E & F DETAILS............ 9
PROPOSED IMPROVEMENTS DETAILS OUTFALL DITCH & RESERVOIR OUTFALL..10
PROPOSED IMPROVEMENTS DETAILS OUTFALL DITCH & PUMP STATION...11

PRINTED
FEB 11 2005

GEORGE A. SIMONS, P.E.          DATE:
                               FL. REG. No. 40437

## CARTER ASSOCIATES, INC.
### CONSULTING ENGINEERS AND LAND SURVEYORS

1708 21st STREET          561-562-4191 (PHONE)
VERO BEACH, FLORIDA 32960  561-562-7180 (FAX)



## LOCATION MAP





SKETCH OF INFORMATION ONLY

THIS IS NOT A BOUNDARY SURVEY
FOR INFORMATION PURPOSES ONLY

**To:** bki@cfl.rr.com
**Cc:** Michelle Reiber; 'Bond, Carrie L SAJ'; (Erin_Gawera@fws.gov); Ron Miedema (Miedema.Ron@epamail.epa.gov); Chris Harnden; Gail Hankinson; 'James Rudnick'
**Subject:** RE: Mary A Site Visit; 11-17-10; Item 1137593


Hello Bill, hope you are doing well.  Following our November 17, 2010 site visit to the Mary A bank, I sent Ryan and Chris the follow up email below.  I haven't heard back from Ryan or Chris regarding the plan outlined below to address the torpedo grass issue.  Ryan and Chris relayed at our site visit they would send the items noted below and implement the plan in December or January.  In addition, we have not received the cost estimates and the monitoring report due October 31, 2010.  I will be getting out a noncompliance letter shortly.  Thanks Bill.


**From:** Jennifer Cope
**Sent:** Thursday, November 18, 2010 11:37 AM
**To:** crharris@cfl.rr.com; Chris Harnden
**Cc:** bki@cfl.rr.com; Michelle Reiber; Marc VonCanal; 'Bond, Carrie L SAJ'; Gary Nichols; (Erin_Gawera@fws.gov); Ron Miedema (Miedema.Ron@epamail.epa.gov); Jessica Yeaman
**Subject:** Mary A Site Visit; 11-17-10; Item 1137593

*PERMIT 15931-6*


Hello Ryan and Chris, thank you for meeting with us yesterday and arranging for the tour of the Mary A Bank. After discussing your revised plan, you agreed to provide an updated torpedo grass coverage map that shows that the treatment will occur throughout the entire mitigation bank site. In addition, this updated map would also include notes describing which areas would be treated by chemical application from a helicopter and which areas would be treated chemically by airboat. You also agreed to provide an implementation schedule and acknowledged that multiple treatments will likely be necessary, and that you would like to begin treatment as soon as possible. When submitting this revised plan, please first coordinate with our Consumptive Use department to determine if a CUP will be required for flooding the bank site following the application.


Additionally, we are still awaiting the cost estimate updates.  Please be sure to include these with your submittal.  Thanks again, Jennifer

# St. Johns River
## Water Management District

Kirby B. Green III, Executive Director • David W. Fisk, Assistant Executive Director • Mike Slayton, Deputy Executive Director
John Juilianna, Palm Bay Service Center Director, Regulatory

525 Community College Parkway S.E. • Palm Bay, FL 32909 • (321) 984-4940
On the Internet at floridaswater.com.

October 25, 2010

The Mary A II LLC
Attn: James Rudnick
PO Box 13633
Tallahassee FL 32317-3633

Re:  Mary A Ranch Mitigation Bank -- Compliance Status
     No. 4-009-15931-6
     Item No. 1137578, 1137583, 1137593, 1144701
     **(Please reference permit and item numbers on all correspondence.)**

Dear Mr. Rudnick:

The District has received your consultant's response regarding the outstanding compliance issues related to this permit. We have reviewed the response and offer the following comments.

Submittal of Monitoring Report for 2009

*Burns*

   In my April 30, 2010 compliance letter, I requested that details be provided of how the prescribed burn plan has been implemented. The only burn information provided in BKI's submittal August 20, 2010 was an aerial depicting the areas burned in years 2006, 2007, 2009 and 2010. Please address the following information:
- Provide the acreage for these areas and all areas anticipated to be burned in the upcoming monitoring period.
- Explain how the plan for the areas burned was derived.
- Explain what coordination efforts regarding burning and water level management have occurred during the last monitoring period.
- Provide photographic documentation of the 2010 burn.

*Water Level Data*

Please provide spreadsheets and/or graphs and a supporting narrative discussion of the correlation between the water level data provided in the tables (from the piezometers and/or staff gauges) and the rainfall data. In addition, discuss how the water levels are

G O V E R N I N G   B O A R D

W. Leonard Wood, CHAIRMAN
FERNANDINA BEACH

Hans G. Tanzler III, TREASURER
JACKSONVILLE

Douglas C. Bournique
VERO BEACH

Michael Ertel
OVIEDO

Maryam H. Ghyabi
ORMOND BEACH

Richard G. Hamann
GAINESVILLE

Arlen N. Jumper
FORT McCOY

John A. Miklos
ORLANDO

The Mary A II LLC

Mary A Ranch Mitigation Bank (Transfer)

October 25, 2010

Application No. 4-009-15931-6

Page 2 of 3

being maintained in accordance with permit condition No. 36, outlined in my April 30, 2010 letter.

## Exotic Control

- The general concept of the nuisance/exotic/inappropriate species eradication plan is acceptable. Please provide the following additional information:
  - o Provide detailed cost estimates for implementation of the plan in accordance with the requirements of 12.4.8(j), A.H.
  - o Please explain, more precisely, how the water levels will be manipulated, and how the rise in water level will affect other areas of the bank, particularly those areas where desirable vegetation is present.
  - o Please note whether this is a multi-treatment plan and, if so, provide a schedule for additional treatments and indicate the timeframe in which you intend to achieve the eradication.
  - o Additional questions regarding this plan may be forthcoming following the upcoming site visit and the submittal of the cost estimates.

## Cost Updates

It was stated in the BKI submittal that the cost estimates were attached, however, no cost estimate updates were provided.

## Site visit and monitoring reports

Please submit this supplementary information by November 12, 2010. The Interagency Review Team (IRT) has requested a site visit for November 17, 2010, to assess current site conditions, verify the location and extent of exotic/inappropriate species, and discuss the exotic/inappropriate species eradication plan. Please let me know within 5 days of receipt of this letter whether this date is acceptable.

In addition, please note that the annual monitoring report for this mitigation bank is due by October 31, 2010. Please submit two copies of the report. We appreciate your efforts in submitting this report in a timely manner.

Please note that this report can be submitted online at the District's website, www.floridaswater.com. Choose the Permitting link, then the Compliance link. To submit this information online, you will need to establish an account on the website. If you need assistance in establishing an account or submitting the report online, please do not hesitate to contact me.

Please make every effort to provide a complete and timely response to this letter to demonstrate progress towards bringing this mitigation bank into compliance with the

The Mary A II LLC                                    Mary A Ranch Mitigation Bank (Transfer)

October 25, 2010                                     Application No. 4-009-15931-6

Page 3 of 3

terms of the permit.  Failure to meet the terms of the permit and a determination of
material non-compliance would result in freezing the mitigation bank credits until the
bank is brought back into compliance.

Should you have any questions, or require any additional information, please do not
hesitate to contact me at (321) 863-1405 or MReiber@sjrwmd.com.

Sincerely,

*Michelle Reiber*

Michelle Reiber, Technical Program Manager
Department of Water Resources

CC:     RIM
        Marc von Canal
        Gail Hankinson
        Glenn Lowe
        Jennifer Cope
        Mary Ellen Winkler

        Bill Kerr
        BKI, Inc.
        325 Fifth Avenue, Suite 204
        Indialantic, FL 32903
        bki@cfl.rr.com

        Carrie Bond -- USACE - Carrie.L.Bond@usace.army.mil

## Helen Cleveland

**From:** Jennifer Cope
**Sent:** Wednesday, June 15, 2011 10:32 AM
**To:** 'bki@cfl.rr.com'
**Cc:** 'James Rudnick'; Michelle Reiber; Fariborz Zanganeh; Chris Harnden'; 'slamb@lambengineering.com'; Regulatory Permitting Application Submittal; John Juilianna
**Subject:** Mary A Mitigation Bank RAI Response application 15931-10

Hi Bill, you have emailed that you are working on a response to the December RAI for this project. And most recently, that Scott Lamb has been coordinating with Fariborz about some engineering issues. We do need to start wrapping this one up. The application was submitted in March 2009 and two RAIs have been sent. I'd like to set up a meeting to go over the December RAI and come to agreements on your response before you officially submit the response. Would that work for you? Can you give me some dates in early July that would work for you, Chris, and Scott? Thanks very much, Jennifer

*Jennifer S. Cope, Senior Regulatory Scientist*
*Division of Environmental Resource Management*
*St. Johns River Water Management District*
*525 Community College Parkway SE*
*Palm Bay FL 32909*
*321-676-6613 (office)*
*321-722-5357 (fax)*

Florida Public Records Law Notice: Emails to and from the District are archived and, unless exempt or confidential by law, will be made available to the public upon request. Users should have no expectation of confidentiality or privacy.

# St. Johns River
## Water Management District

Kirby B. Green III, Executive Director • David W. Fisk, Assistant Executive Director • Mike Slayton, Deputy Executive Director
John Juilianna, Palm Bay Service Center Director, Regulatory

525 Community College Parkway S.E. • Palm Bay, FL 32909 • (321) 984-4940
On the Internet at floridaswater.com.

December 6, 2010

BKI Inc
Attn: William Kerr
325 Fifth Ave Ste 204
Indialantic, FL 32903

RE:   Mary A Ranch Mitigation Bank
      Application No.  4-009-15931-10
      **(Please reference application number on all correspondence.)**

Dear Mr. Kerr:

The staff has reviewed your response to the District's Request for Additional Information (RAI) letter.  Unfortunately, the following technical information is lacking to sufficiently review the possible impacts the project may have on the surrounding area.  This information is again being requested pursuant to the authority vested in the St. Johns River Water Management District under subsection 373.413(2), Florida Statutes (F.S.), and sections 40C-4.101 and 40C-4.301, Florida Administrative Code (F.A.C.).

In order to expedite the review of your application, please use the application number referenced above on all correspondence, and submit three (3) copies of all requested information unless otherwise indicated by a specific information request.

1. As previously requested, please describe all work that has been completed to date and all work that remains to be completed.  Provide a corresponding notated aerial photograph showing the location of all completed and proposed mitigation bank activities and, for each activity that has not been completed, provide a detailed timeline for the completion of that work. [12.4.4(d), A.H; 40C-4.301, F.A.C.]

2. The submitted construction plans show a new outfall point at the northwest of the mitigation site that was not included in the original mitigation plans and permit. The outfall point proposes a control structure consisting of three culvert risers, and three 24-inch discharge pipes. Please clarify whether any other modifications are proposed to the function and operation of the original control structures such as  replacement  and/or removal of the original control structures that were authorized discharging to C-54 and adjacent grove property. If that is the case,

---

GOVERNING BOARD

W. Leonard Wood, CHAIRMAN          Hans G. Tanzler III, VICE CHAIRMAN          Maryam H. Ghyabi, TREASURER          John A. Miklos, SECRETARY
FERNANDINA BEACH                   JACKSONVILLE                               ORMOND BEACH                         ORLANDO

Douglas C. Bournique               Michael Ertel                Richard G. Hamann            Arlen N. Jumper
VERO BEACH                         OVIEDO                       GAINESVILLE                  FORT McCOY

BKI Inc

December 8, 2010

Mary A Ranch Mitigation Bank

Application No. 4-009-15931-10

Page 2 of 5

please provide the signed and sealed engineering plans showing the work that will be modified, or remains to be completed. [12.4.4(d), A.H; 40C-4.301, F.A.C.]

3. Please provide the operational schedule and elevations of the proposed risers, and describe how the control elevation(s) of risers is intended to meet the scope of condition No.36 of the original permit. Also, correct the proper size of the discharge pipes provided on sheet 3 of 3. The outfall section detail show 30-inch and control structure detail show 24-inch pipes. [12.4.4(d), A.H; 40C-4.301, F.A.C.]

4. A common reason of failure for large earthen embankment dams/levees is due to internal erosion of pipes. Please provide the life expectancy of the proposed risers and CMPs (Corrugated Metal Pipes), and include the construction methodology and techniques to prevent failure due to corrosion, erosion, seepage and washout of the pipes and levee. Staff recommends using concrete pipes and controlling structures. [12.4.4(d), A.H; 40C-4.301, F.A.C.]

5. As previously requested, please address the following items related to the construction and implementation cost estimate previously provided. Note that new cost estimates and supporting documentation must be provided since the last approved cost estimates were submitted in September 2007:

   a. It does not appear as though surveying and as-built costs for the construction of the levee and other water management structures have been included in the cost estimate. Please provide the costs for these activities in your estimate and provide the associated supporting documentation.

   b. There is a note on the north levee reconstruction bid, which indicates the pricing to complete the levee reconstruction work is dependent upon using the dirt from the ditch reconstruction and utilizing the existing levees to transport the fill material. Please provide evidence that appropriate field tests, or other investigations, have been conducted to verify the fill material will be suitable for levee reconstruction and the existing levees will be sufficient to support the fill transport operations.

   c. The cost estimate must be certified by a licensed professional whose license authority in the State of Florida includes the ability to provide such certified written estimates.

   d. Please provide draft financial responsibility documents for the remaining construction and implementation activities associated with the mitigation bank. These documents must be in the form of a surety bond, performance bond, irrevocable letter of credit, or trust fund. Please note

that if a bond or an irrevocable letter of credit is used as the financial mechanism, a standby trust fund must be established, in which all payments under the bonds or letter of credit shall be directly deposited. The amount of financial responsibility established shall equal 110% of the cost of construction and implementation of the mitigation bank. [12.4.8, A.H.]

6. Please provide an updated cost estimate for the perpetual management at this time. Please provide the following information:

   a. Include all costs associated with the perpetual management of the mitigation bank including, but not limited to, the costs of maintaining, operating, and replacing any structures, controlling nuisance or exotic species, fire management, consultant fees, monitoring activities and reports, and any other costs associated with perpetual management. Submit verifiable supporting documentation to support your estimate.

   b. Submit an updated financial responsibility mechanism in accordance with the requirements in Section 12.4.8(i), A.H., or demonstrate that the existing financial assurance mechanism currently contains sufficient funds for perpetual management of the bank. Please note that the amount of perpetual management financial responsibility must be sufficient to generate annual revenue equal the annual cost of perpetual management, assuming an average rate of return of six percent per annum.

   c. Demonstrate that the costs are based upon a third party performing the work at the fair market value of services and indicate the source of all cost estimates. [12.4.8, A.H.]

Please be aware, that suggestions or other direction provided by District staff are offered to assist applicants in complying with District rules. However, applicants bear the burden of demonstrating that their application meets the applicable rule requirements. Although District staff may provide suggestions to applicants that would allow staff to recommend approval of an application to the District Governing Board or senior staff, the final decision regarding the issuance or denial of a permit is up to the District Governing Board or senior staff. Applicants are hereby advised that the Governing Board and senior staff are not bound by previous statements or recommendations of District staff regarding an application.

BKI Inc

December 6, 2010

Mary A Ranch Mitigation Bank

Application No. 4-009-15931-10

Page 4 of 5

If the applicant desires to dispute the necessity for any information requested on an application form or in a letter requesting additional information, pursuant to section 373.4141, F.S., he or she may request an administrative hearing in accordance with section 120.57, F.S.  Any petition for administrative hearing must comply with Chapter 28-106 and section 40C-1.1007, F.A.C.

Please be advised, pursuant to subsection 40C-1.1008, F.A.C., the applicant shall have 120 days from receipt of a request for additional information regarding a permit or license application undergoing review by the District to submit that information to the District.  If an applicant requires more than 120 days in which to complete an application, the applicant may notify the District in writing of the circumstances and for good cause shown, the application shall be held in active status for additional periods commensurate with the good cause shown.  Any application which has not been technically completed within the given time period following a request for additional information by the District shall be recommended for denial at the next regularly scheduled Governing Board meeting.  Denial of an application due to failure to submit requested additional information shall be a denial without prejudice to applicant's right to file a new application.

In addition, no construction shall begin on the proposed project until a permit is issued by the St. Johns River Water Management District.  This is pursuant to subsection 40C-4.041(1), F.A.C., which states in relevant part, "...Unless expressly exempt, an individual or general environmental resource permit must be obtained from the District under Chapter 40C-4, 40C-40, 40C-42, 40C-44 or 40C-400, F.A.C., prior to the construction, alteration, operation, maintenance, abandonment or removal of any stormwater management system, dam, impoundment, reservoir, appurtenant work or works, including dredging or filling, and for the maintenance and operation of existing agricultural surface water management systems or the construction of new agricultural surface water management systems...".

BKI Inc

December 6, 2010

Mary A Ranch Mitigation Bank

Application No. 4-009-15931-10

Page 5 of 5

If you have any questions, please contact Fariborz Zanganeh at (321) 676-6630, or Jennifer Cope at (321) 676-6613.

Sincerely,

Fariborz Zanganeh, P.E.
Supervising Professional Engineer
Department of Water Resources

Jennifer Cope
Senior Regulatory Scientist
Department of Water Resources

cc: RIM – RAIL
    Marc von Canal
    Glenn Lowe
    Mary Winkler
    Michelle Reiber
    Gail Hankinson
    Jeff Elledge
    John Juilianna
    The Mary A II LLC – Attn:  James Rudnick
                        226 N. Duval Street
                        Tallahassee, FL 32301
    Lamb Engineering, Inc. - Attn: Scott Lamb
                        504 N Harbor City Boulevard
                        Melbourne FL 32935-9227

## <u>Mitigation Credit Reservation<br> and Purchase Agreements</u>

**Federal Trust Bank (Spur Ranch) v. Mary A. II, LLC et al**

**Schedule of Credit Reservation Agreements**

**6/30/2011**

| Date of | | | No. of Credits | | Purchase | | |
|---|---|---|---|---|---|---|---|
| Agreement | Expiration | Name/Purchaser | District | ACOE | Price | Deposit | |
| | | **Existing Agreements** | | | | | |
| 6/20/2008 | 12/31/2011 | Cameron General Contractors, Inc. | 10.7 | | 428,000 | 85,600 | |
| 7/6/2009 | 1/6/2010 | Montreal, Ltd. | 1.9 | | 76,000 | 35,468 | |
| | | **Grand Total** | | | | 121,068 | |
| | | **Pending Agreements** | | | | | |
| | | Omni Waste of Osceola County | 28 | 3.1 | 1,119,500 | 111,950 | Received |
| | | Brevard County Board of County Commissioners | 116 | | 4,640,000 | 696,000 | Proposed |

| Established Price Per Credit | Prices |
|---|---|
| SJRWMD credit | $40,000 |
| Combined credit District and ACOE | 45,000 |
| | |
| **Standard Terms** | |
| 10% down payment at signing | |
| 180 day reservation | |
| 50% of deposit earned at signing | |
| Refund prorated per schedule up to 150 days | |
| Fully forfeited at 180 days | |
| Automatic extension for 180 days with additional 10% | |



**DEAN MEAD**

**Attorneys and Counselors at Law**

8240 Devereux Drive
Suite 100
Viera, Florida 32940

321-259-8900
321-254-4479 Fax
www.deanmead.com

Orlando
Fort Pierce
Viera
Gainesville

**LAURA MINTON YOUNG**
321-259-8900 x 6106
lyoung@deanmead.com

June 29, 2011

**ORIGINAL VIA U.S. MAIL & E-MAIL**

Omni Waste of Osceola County, LLC
c/o WSI
1099 Miller Drive
Altamonte Springs, FL 32701
Attn: Michael Kaiser
Email: mkaiser@wasteservicesinc.com

RE:   The Mary A II, LLC Sale of Twenty-Eight (28.0) Mitigation Bank Credits from the
      Mary A Mitigation Bank, pursuant to SJRWMD Mitigation Banking Permit No. 4-009-
      15931-6, to Omni Waste of Osceola County, LLC, for ERP Permit No. 49-0199752-005
      and Three and One-tenth (3.10) Mitigation Bank Credits from the Mary A Mitigation
      Bank, pursuant to United States ACOE Permit No. SAJ-2002-01346, to Omni Waste of
      Osceola County, LLC, for ACOE Permit Application No. SAJ-1999-5000

Dear Mr. Kaiser:

    We have received your transmittal of the Mary A Mitigation Bank Credit Reservation and
Purchase Agreement fully executed June 28, 2011, by Omni Waste of Osceola County, LLC, as
"Buyer", together with check No. 101913668 to our escrow account in the amount of $111,950.00,
representing the deposit due from Buyer thereunder. Enclosed is a fully executed copy of the Mary A
Mitigation Bank Credit Reservation and Purchase Agreement for your records. In order to finalize the
purchase, Buyer is required to pay the balance owed prior to the credits being transferred from the Mary
A Mitigation Bank to the Buyer's project. Please do not hesitate to contact us, if you have any
questions or concerns with regard to this matter.

                                    Sincerely,

                                    Laura Minton Young

LMY:mm
Enclosure
cc: (w/encls.):   Bill Kerr @ BKI, Inc.
                  Jim Rudnick @ The Mary A II, LLC (via e-mail)
                  Michelle Reiber @ SJRWMD
                  Erica Goshleski @ DEP (via U.S. Mail and e-mail)
                  Wil Murphy (via e-mail)
                  John Kurtz (via e-mail)

V0145508v1

# MARY A MITIGATION BANK CREDIT RESERVATION AND PURCHASE AGREEMENT

THE MARY A II, LLC, a Florida limited liability company (hereinafter referred to as "Seller"), the owner of the land known as the Mary A Mitigation Bank, does hereby reserve and set aside for future assignment for the sole benefit of OMNI WASTE OF OSCEOLA COUNTY, LLC a Florida limited liability company (hereinafter referred to as "Buyer"), for a reservation period of 180 days, as the same may be extended as provided for hereinbelow, a total of up to (choose the applicable credit reservation(s)):

1. Twenty-eight (28.0) **(to the nearest tenth of a credit)** mitigation bank credit(s) issued to Seller's Mary A Mitigation Bank pursuant to Seller's mitigation banking permit from St. Johns River Water Management District  (SJRWMD Permit Number 4-009-15931-6) (hereinafter referred to as "District or DEP Credits"); and

2. Three and One-tenth (3.10) **(to the nearest tenth of a credit)** mitigation  bank credit(s) issued to Seller's Mary A Mitigation Bank pursuant to Seller's mitigation banking permit from the United States Army Corps of Engineers (ACOE  Permit Number SAJ-2002-01346) (hereinafter referred to as "ACOE Credits").

This reservation is for use of credits in connection with mitigating adverse wetland impacts which may arise as a result of construction or other projects undertaken or to be undertaken by the Buyer (ERP Permit Application Number: 49-0199752-005 and/or ACOE Permit Application Number: SAJ-1999-5000).  The Purchase Price (as defined hereinbelow) for the reserved credits shall be calculated as follows:

1. If the Buyer is reserving only Department of Environmental Protection (DEP) Credits and not ACOE Credits, the purchase price for Twenty-eight (28.0) DEP Credits is Nine Hundred Eighty Thousand and No/100 Dollars ($980,000.00) (hereinafter referred to as the "DEP Credit Purchase Price"), and the required deposit is Ninety-eight Thousand and No/100 Dollars ($98,000.00), representing ten percent (10%) of the DEP Credit Purchase Price. The DEP Credit Purchase Price is equal to the product of the number of DEP Credits multiplied by Thirty-five Thousand and No/100 Dollars ($35,000.00).

2. If the Buyer is reserving both DEP Credits and ACOE Credits, the combined purchase price for Three and One-tenth (3.10) DEP Credits and Three and One Tenth (3.10) ACOE Credits is One Hundred Thirty-nine Thousand Five Hundred and No/100 Dollars ($139,500.00) (hereinafter referred to as the "Combined Credit Purchase Price") and the required deposit is Thirteen Thousand Nine Hundred Fifty and No/100 Dollars ($13,950.00), representing ten percent (10%) of the Combined Credit Purchase Price. The Combined Credit Purchase Price is equal to the product of the number of DEP Credits multiplied by Forty-five Thousand and No/100 Dollars ($45,000.00).

The terms "DEP Credit Purchase Price" and "Combined Credit Purchase Price" are herein sometimes referred to as the "Purchase Price".  Upon receipt of the deposit, Seller will send a Notice of Credit Reservation to Buyer, DEP and ACOE.  Upon receipt of the total Purchase Price for the credits, Seller will send a Request for Withdrawal of Mitigation Credits to the DEP and/or the ACOE, as applicable, requesting DEP and/or ACOE to withdraw the specified credits from the Mary A Mitigation Bank upon their approval of the Buyer's permits.

1

The deposit is refundable at a pro-rated interval which fully expires 150 days from the date the deposit is received. The pro-rated interval terms are as follows: 50% of the deposit shall be refundable within the first 30 days; 40% of the deposit shall be refundable within 60 days; 30% of the deposit shall be refundable within 90 days; 20% of the deposit shall be refundable within 120 days; 10% of the deposit shall be refundable within 150 days; and 0% of the deposit shall be refundable thereafter. No refund will be available upon expiration of the 150-day time interval. However, an extension to reserve the credits for one (1) additional reservation period of 180 days will be granted if the credits are still available and an additional deposit of 10% of the Purchase Price is paid. The balance of the Purchase Price shall be due prior to the issuance of Buyer's permits to use the mitigation bank credits to offset wetland impacts or by the end of the 180 day credit reservation period, whichever comes first (subject to the right of Buyer to extend the 180 day credit reservation period provided for in the immediately preceding sentence). Failure by Buyer to close the purchase within the time stated herein shall be a default of this Agreement, in which event Seller shall have the right to terminate this Agreement and all deposits and monies paid by Buyer shall be forfeited to Seller.

Seller warrants that it will take no action inconsistent with the reservation(s) and future assignment described herein. In the event Seller is unable to assign the credits reserved herein to Buyer for any reason (including, but not limited to, Seller's inability to obtain issuance of Seller's permits, Seller's inability to obtain the release of additional credits or the revocation of Seller's permits for any reason), Seller shall return to Buyer any deposit or other monies received from Buyer pursuant to this Agreement. In such event, this Agreement shall be terminated and become null and void, and Buyer and Seller shall have no further liability or obligation to each other.

Payment shall be made to Dean Mead et al. (R. Mason Blake, Esq.), as Escrow Agent for The Mary A II, LLC, and sent to 8240 Devereux Drive, Suite 100, Viera, Florida, 32940.

|  | Buyer: | Seller: |
|---|---|---|
| Company Name: | Omni Waste of Osceola County, LLC | THE MARY A II, LLC |
| By: | *Mike Kaiser* | *R. Mason Blake, as attorney-in-fact* |
| Name & Title: | Mike Kaiser, Engineer | R. Mason Blake, attorney-in-fact |
| Executed: | June 16, 2011 | 6/28/11 |

2

## MARY A MITIGATION BANK CREDIT RESERVATION AND PURCHASE AGREEMENT

THE MARY AII, LLC, a Florida limited liability company (hereinafter referred to as Seller"), the owner of the land known as the Mary A Mitigation Bank, does hereby reserve and set aside for future assignment for the sole benefit of Brevard County Board of County Commissioners (hereinafter referred to as "Buyer"), for a reservation period of 365 days, as the same may be extended as provided for hereinbelow, a total of up to:

Fifty-eight (58) acres of wetland impacts requiring combined state and federal bank credits issued to Seller's Mary A Mitigation Bank pursuant to Seller's mitigation banking permit from St. Johns River Water Management District (SJRWMD) Permit Number 4-009-15931-6); and pursuant to Seller's mitigation banking permit from the United States Army Corps of Engineers (ACOE) Permit Number SAJ-2002-01346).

This reservation is for use of credits in connection with mitigating adverse wetland impacts which may arise as a result of the construction of the St. Johns Heritage Parkway or other projects undertaken or to be undertaken by the Buyer (ERP Permit Application Number: 4-009-126163-1 and/or ACOE Permit Application Number: SAJ-2010-3562. The Purchase Price (as defined hereinbelow) for the reserved credits shall be calculated as follows:

The Buyer is reserving both SJRWMD Credits and ACOE Credits, the combined purchase price for Fifty-eight acres of wetland impacts requiring SJRWMD and ACOE Credits is Four million six hundred forty thousand dollars ($ 4,640,000.00) (hereinafter referred to as the ("Combined Credit Purchase Price") and the required deposit to reserve these credits is Six hundred ninety-six thousand dollars ($696,000.00), which represents fifteen percent (15%) of the Combined Credit Purchase Price.

The term "Combined Credit Purchase Price" is herein sometimes referred to as the "Purchase Price".

Upon receipt of the deposit, Seller will send a Notice of Credit Reservation to Buyer and to the SJRWMD. Upon receipt of the total Purchase Price for the credits, Seller will send a Request for Withdrawal of Mitigation Credits to SJRWMD and/or the ACOE, as applicable, requesting SJRWMD or ACOE to withdraw the specified credits from the Mary A Mitigation Bank upon their approval of the Buyer's permits. The total number of credits purchased will be adjusted based upon the permits issued by SRJWMD and the ACOE respectively.

The deposit is non-refundable; however, before the expiration of the three hundred sixty-five (365) day credit reservation time period this credit reservation may be extended for an additional consecutive One hundred eighty (180) day period upon payment of an additional

non-refundable 5 percent of the total purchase price: Two hundred and thirty-two thousand dollars ($232,000.00).

The balance of the Purchase Price shall be due prior to the issuance of Buyer's permits to use the mitigation bank credits to offset wetland impacts or by the end of the 365 day credit reservation period, whichever comes first.  Failure by Buyer to close the purchase within the time stated herein shall be a default of this Agreement, in which event Seller shall have the right to terminate this Agreement and all deposits and monies paid by Buyer shall be forfeited to Seller.

Seller warrants that it will take no action inconsistent with the reservation(s) and future assignment described herein. In the event Seller is unable to assign the credits reserved herein to Buyer for any reason (including, but not limited to, Seller's inability to obtain issuance of Seller's permits, Seller's inability to obtain the release of additional credits or the revocation of Seller's permits for any reason), Seller shall return to Buyer any deposit or other monies received from Buyer pursuant to this Agreement.  In such event, this Agreement shall be terminated and become null and void, and Buyer and Seller shall have no further liability or obligation to each other.

Payment shall be made to Dean Mead et al. (R. Mason Blake, Esq.), as Escrow Agent for The Mary AII, LLC, and sent to 8240 Devereux Drive, Suite 100 Viera, Florida, 32940.

| | Buyer: | | Seller: |
|---|---|---|---|
| Company Name: | _____ | | THE MARY A II, LLC |
| By: | _____ | | _____ |
| Name & Title: | _____ | | R. Mason Blake, attorney-in-fact |
| Executed: | _____ | | _____ |

2

**<u>Receiver's Fees</u>**

# John C. Kurtz, Receiver

**100 Vista Royale Blvd.**
**Vero Beach, Florida 32962**

# Invoice

**Federal Trust Bank (Spur Ranch Enterprises) vs. The Mary A. II, et al**     6/30/2011
**Professional services provided subject to Order Appointing Receiver**
**Case No. 2010-CA-032241**

| Date | Description of services rendered | Hours |
|---|---|---|
| **2011** | | |
| **June** | | |
| **13** | Review order appointing receiver; prepare for conference call; conference call with defendants and counsel | 1.90 |
| **14** | Meet with Chris Marine at his office; review documents received | 1.00 |
| **16** | Phone calls to DuRant and Kerr; review documents received from Marine's office; prepare schedule of CRA deposits with addendums | 3.00 |
| **20** | Phone calls and emails to Young, Esq. and Reiber SJWMD | 0.80 |
| **21** | On site meeting and property tour at the Mary A with Bill Kerr and Wayne Yates; phone calls with Michelle Reiber and Laura Young, Esq. | 7.00 |
| **22** | Phone conversation with Bill Kerr | 0.40 |
| **27** | Emails with Dean Mead firm re: escrow records; email to JD Durant, Esq.; review of escrow schedules | 1.50 |
| **28** | Draft letter to Laura Yound requesting release of funds; emails; phone calls to Bill Kerr; JD Durant; Jennifer Cope, SJRWMD; set up bank account at Marine Bank, Vero Beach | 3.00 |
| **30** | Numerous emails and phone calls re: unauthorized signing of mitigation credit application; being work on drafting June, 2011 Report to the Court | 2.50 |

|  |  |
|---|---|
| **Total hours for the billing period** | 21.1 |
| Rate | 150.00 |
| **Total professional fees** | **3,165.00** |

**Out of pocket expenses:**
Postage
Copy costs (Staples)

|  |  |
|---|---|
| Total out of pocket expenses | 0.00 |
| **Grand Total** | **3,165.00** |

### Due upon receipt

# EXHIBIT "D"

**(Liquidation Analysis)**
**(To Be Provided)**