**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

In re:

THE MARY A II, LLC,   Case No. 11-40693-LMK
   Chapter 11
   Debtor.
_____/

**SPUR RANCH ENTERPRISES, LLC'S MOTION**
**TO EXCUSE RECEIVER FROM COMPLIANCE WITH**
**11 U.S.C. §543, AND ALTERNATIVELY, MOTION FOR**
**THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Spur Ranch Enterprises, LLC (the "Spur Ranch"), by and through its undersigned counsel, hereby moves to excuse the state court appointed receiver from compliance with the turnover and other requirements in 11 U.S.C. §543, and alternatively for the appointment of a trustee, and in support thereof, states:

**Introduction and Preliminary Statement**

Spur Ranch requests that the state-court appointed receiver, who is in possession of and managing the Debtor's property, be excused from the turnover requirements under 11 U.S.C. §543. As set forth below, the Debtor has mismanaged its affairs resulting in harm to the property that the receiver has spent the last three months correcting. Turnover of the property to the Debtor would cause further harm to the estate and its creditors.

**Factual Background**

1. Spur Ranch is the owner and holder of a loan made by Federal Trust Bank to the Debtor in the original principal amount of $6,650,000 (six million six hundred fifty

thousand) (the "Loan").  The Loan is evidenced by a Renewal And Consolidation Promissory Note date July 20, 2007.

2. As security for the Loan, the Debtor pledge certain real and personal property as described in that certain Mortgage and Security Agreement dated August 17, 2004 (the "Property") and recorded at O.R. Book 5356, Page 8099 of the Public Records of Brevard County, Florida, as subsequently modified and renewed (the "Mortgage").

3. To further secure the obligations under the Loan, the Debtor executed an Assignment of Rents, Leases, Profits and Contracts (the "Assignment of Rents").  The Note, the Mortgage, the Assignment of Rents and all other documents evidencing the Loan shall be referred to herein as the "Loan Documents."

4. The Property which serves as collateral for the Loan includes 2,068.5 acres of land at the Southern Border of Brevard County, in the St. Johns River Water Management District and certain personal property associated therewith.  The Property was formerly a citrus grove, but was re-permitted in November 2002 as a wetlands "mitigation bank" known as The Mary A Mitigation Bank.

## Wetlands Mitigation Banking

5. Wetland mitigation banking is the present day restoration of degraded wetlands to pristine conditions in return for ecological "credits" which are then sold to third parties in order to offset development activity which negatively impacts wetlands.  It is in satisfaction of the command of Section 404 of the Clean Water Act, which specifies that all wetland impacts must have a net zero effect; an acre of wetland destruction must be offset by an acre of wetland creation.  The end result is a permanently preserved large tract of wetland habitat

consolidated from a myriad of various public and private development projects within a defined watershed.

6. In October 2004, the mitigation bank's original permit was transferred to The Mary A II, LLC. The original permit details the number of credits available for resale by owner upon compliance with the conditions of the permit specifically describing the environmental restoration and maintenance required to be completed by the owner. Such environmental restoration and maintenance includes erosion and sediment control measures, alterations to the surface water control system, and elimination of nuisance or exotic species. The purpose of the project is to contribute to the viability of various listed species that are known to the St. Johns River Water Management District (the "<u>District</u>") to occupy the region.

7. As specifically set forth in the Permit "[t]he Bank is expected to be able to provide typical freshwater marsh functions, wet prairie functions, and some functions of forested wetlands." To this end, the Property is subject to a conservation easement that is of record, as well as the monitoring function of the District.

8. As part of the District's monitoring of the project, annual reports are required to be submitted, and water levels must be recorded at least monthly. To ensure that the expenses of the restoration and maintenance of the mitigation bank are met, the Permit further requires documentations of financial responsibility in the form of a trust set up to ensure that monies are available to perform the restorative and maintenance work required.

9. By the express terms of the Permit, however, the District may withdraw these mitigation credits "if at any time the Bank is not in material compliance with the terms of this

Permit." Permit ¶33.  At this time, The Mary A Mitigation Bank is not in compliance with its Permit.

10. As a mitigation bank, the Debtor has been restored to the state of undeveloped Florida wetlands.  Once the environmental restoration project was complete, the owner was awarded credits from the District and the Army Corps of Engineers which could then be sold to public and private developers of projects located within its mitigation service area to offset, or mitigate, any adverse environmental impact caused by the development.

11. The Property has negative value in and of itself because the cost of maintaining it as a functioning Florida wetlands ecosystem is not offset by any economic use of the land. Rather, the value of the mitigation bank lies in the mitigation credits marketed and sold to third parties.

## Debtor's Default and the Foreclosure Action

12. The Debtor breached the terms of the Loan Documents by failing to make the payments due on July 17, 2009, and each and every payment due thereafter.

13. The Debtor's default resulted in the filing of an action to foreclose the Mortgage on the Property and to collect on a guaranty provided by the Debtor's principal, James Rudnick ("Rudnick").  This action is currently pending in the Circuit Court for with Eighteenth Judicial Circuit in and for Brevard County, Florida as case no. 2010-CA-032241 (the "Foreclosure Action").

14. Currently, Spur Ranch is owed approximately $8 million.

15. At various depositions and hearings, the Debtor has admitted that the Loan Documents are valid and enforceable and the existence of the default described herein.

16.     On June 7, 2011, the state court appointed John Kurtz as receiver (the "Receiver") over the Property based, in part, on the Debtor's failure to maintain the Property and maintain compliance with the standards required by the District.  A true and correct copy of the Receiver Order is attached hereto as **Exhibit "A."**

**Debtor's Failure to Maintain Property as Required for Mitigation Banking**

17.     Specifically, the Debtor allowed torpedo grass, an exotic species that is extremely difficult and costly to eradicate once established, to cover as much as 70-90% of the Property.  The District has also found and reported other noncompliance items, including: (a) failure to provide monitoring reports as to water levels; (b) failure to provide monitoring reports of vegetative species and cover estimates; (c) failure to provide burns schedules; (c) failure to provide water level control schedules; and (e) failure to provide eradication and management plans for invasive, exotic or inappropriate vegetation.

18.     As a result of these noncompliance issues, the District warned the Debtor that "Failure to meet the terms of the Permit and a determination of material non-compliance would result in freezing the mitigation bank credits until the bank is brought back into compliance."

19.     At his deposition on February 4, 2011, Mr. Rudnick testified that he had no plan to take care of the torpedo grass and would not commit the funds to remedy the problem while the Foreclosure Action was pending.  In fact, as one of main reasons for the appointment of the Receiver, the state court found that the torpedo grass was a threat to the Property and would constitute waste if no destroyed right away and the court was not convinced that Mr. Rudnick would do so.

20. Since his appointment, the Receiver has instituted a plan to eradicate the torpedo grass and thereby restore The Mary A Mitigation Bank's standing with the District and ensure its ability to continue selling credits.

### Debtor Fails to Turnover Complete and Accurate Financial Records

21. After the Receiver's appointment on June 7, he attempted to gather the financial records of the Debtor in order to fulfill his responsibilities pursuant to the Receiver Order. Despite repeated requests, the Debtor was not forthcoming with its financial records. After a conference call with the Mr. Rudnick on July 20, the Receiver did receive some financial records, but had numerous questions about those records, which he outlined in a letter dated August 3, 2011. The Receiver asked, among other questions, why the balance sheet showed three bank accounts when the principals stated there was only one. The Receiver also questioned the presence on the balance sheet of two aircrafts and why such assets had not been turned over to the Receiver. The Debtor then took the position that these assets were no longer owned by the Debtor. These deficiencies resulted in the filing of a Motion to Compel for Entry of Sanctions, but the motion was not heard prior to the filing of this bankruptcy case. A true and correct copy of the Motion to Compel with exhibits is attached hereto as **Exhibit "B."**

22. The Foreclosure Action was scheduled for a summary judgment hearing on August 29, 2011 and was on the court's trial docket beginning September 6, 2011. Just hours before the summary judgment hearing, the Debtor filed this Chapter 11 case.

23. For the reasons stated below, Spur Ranch requests that the Receiver be excused from compliance with the turnover and other requirements of §543.

## LEGAL ARGUMENT

24.     The Receiver should be excused from compliance pursuant to § 543(d)(1) because the interest of the Debtor's creditors would best be served by allowing the Receiver to remain in possession. The factors this Court should consider in deciding whether to excuse a custodian from turnover under §543 include (1) whether there has been mismanagement by the debtor prepetition; (2) whether reorganization is likely; and (3) whether the funds necessary for reorganization exist which will be applied towards it. *See Matter of WPAS, Inc.*, 6 B.R. 40 (Bankr. M.D. Fla. 1980) (where the bankruptcy court excused a state-court appointed receiver from turning over the assets of the debtor when the evidence showed that the debtor mismanaged the property); *Powers Aero Marine Services, Inc. v. Merill Stevens Dry Dock Co.*, 42 B.R. 540, 544 (court excused custodian from turnover based on the debtor's mismanagement and inability to fund a reorganization.)

25.     Allowing the Receiver to remain in possession is in the best interest of creditors because the Debtor has mismanaged the business and the Debtor lacks sufficient income or ability reorganize or maintain the Property during this case.

26.     The Debtor's mismanagement is highlighted by the facts listed above. The Debtor failed and refused to maintain the Property in such a manner as required by the District which failure placed the Property and the Debtor's business at substantial risk. The Debtor's mismanagement is also demonstrated by its failure to maintain complete and accurate records and to cooperate with the Receiver in identifying the Debtor's assets.

27.     The Debtor has no realistic possibility of an effective reorganization. The Debtor asserts that it will reorganize through the sale of mitigation credits; however, the facts

demonstrate that this is an illusory plan. The Debtor's history shows that it has had very minimal sales in the last two years. (See Exhibit B to the Debtor's Disclosure Statement – Doc. No. 8). Yet, the Debtor proposes that it can turn this around and in short order sell enough mitigation credits to generate over $5 million – which amount is still not sufficient to pay its secured debt in full and generate a distribution for unsecured creditors. The contract with Brevard County has been in talks for several years and as of today, there still is no contract. Even if there was a contract, the project is not scheduled to be completed and full payment received for several years. Additionally, the Debtor's Plan seems to be premised on the Property being valued at $25 million, but this valuation is based on a 3 year old appraisal with numerous assumptions that are inconsistent with reality. Spur Ranch believes the Property's value to be much closer to the amount of its debt.

28. Spur Ranch requests that this Court allow the Receiver to retain possession and control over the Property until such time as a decision is made on its Motion to Dismiss. Alternatively, Spur Ranch asserts that the factors listed above support the appointment of a trustee under 11 U.S.C. § 1104.

**WHEREFORE**, the Receiver respectfully request that this Court excuse the Receiver from turnover, or alternatively, appoint a chapter 11 trustee, and grant such other and further relief as this Court deems appropriate.

Dated: September 14, 2011

> */s/ Lori V. Vaughan*
> LORI V. VAUGHAN
> Florida Bar No. 0154921
> lvaughan@trenam.com
> TRENAM, KEMKER, SCHARF, BARKIN,
>   FRYE, O'NEILL & MULLIS, P.A.
> Post Office Box 1102
> Tampa, Florida  33601-1102
> Telephone: 813 223 7474
> Facsimile: 813 229 6553
>
> Counsel for Spur Ranch Enterprises, LLC

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *MOTION TO EXCUSE RECEIVER* was furnished on September 14, 2011, by the Court's Electronic Noticing System (ECF) and/or by U.S. mail to: **Debtor, the Mary A II, LLC**, 226 N. Duval Street, Tallahassee, FL 32301-1314; **Brian G. Rich, Esq**., Berger Singerman, 125 S. Gadsden Street, Suite 300, Tallahassee, FL 32301-1589; **Jason H, Egan**, US Trustee, 110 E. Park Avenue, Suite 128, Tallahassee, FL 32301; and **All Parties In Interest (**which also includes 20 Largest Unsecured Creditors) (matrix attached).

> */s/ Lori V. Vaughan*
> Attorney